McLAURINE *et al.*, Defendants in Error, v. MONROE'S ADMINISTRATORS, Plaintiffs in Error.

1. A decree rendered in a sister state without due notice to the defendant is not binding upon him in this state, nor can it be evidence against him for any purpose as a decree. A general objection to the admission of such a decree as evidence is sufficient.
2. *Quere*, whether the doctrine of *lis pendens* is applicable to movable personal property.
3. Where there is a right of action against several, a mere judgment against one without satisfaction is no discharge of the others.
4. One who purchases property from another, knowing that the vendor has no right to the same and that another claims it, may, in equity, be treated as a trustee for the true owner. The owner may also maintain an action at law in the nature of an action of trespass.
5. One A. by deed conveyed to the children of his brother a female slave with her increase; the deed provided that the property conveyed should remain with the wife of said brother for the use and support of herself and said children during her life, or so long as she might "remain his widow" after his death. The deed also further provided that should she have any other children while the wife of said brother, they should be entitled to a share of the property with the children living at the date of the deed; at the death of said wife equal division to be made among the said children. *Held*, that this deed conferred no such interest on the wife as was subject to execution; that the legal title to the slaves was not in her.

*Error to Morgan Circuit Court.*

This was a bill in chancery filed in 1849 before the new code of practice went into effect. In the year 1825 Madison McLaurine, who lived in Tennessee, executed a deed by which, in consideration of love and affection for the heirs

and children of his brother William McLaurine, he conveyed " unto the said children and legal heirs of the said William McLaurine" a negro woman named Nancy and her child Sophia, also household and kitchen furniture, " to have and to hold unto the children and legal heirs of the said William McLaurine in fee simple forever." The grantor agreed to warrant and defend said property: " Nevertheless, with this express condition, that the aforesaid property, and every part and parcel thereof, is to remain with the wife of the said William McLaurine for the use and support of herself and the aforesaid children and heirs of William McLaurine during her life, or so long as she may remain the widow of the said McLaurine after his death." The deed goes on to provide that should said wife have any other children born thereafter while she should remain the wife of said William McLaurine, they should share equally with those then living; that at the death of said wife, " and not until then, shall an equal division take place amongst the children and legal heirs of said McLaurine."

The complainants in the present suit are the said William McLaurine and Nancy his wife, and their children, some of whom were minors when the bill was filed. The complainants, in brief, set forth in their bill the above deed; that the complainants have always been residents of Tennessee; that the slave Nancy and her child were delivered to the said Nancy McLaurine and her then living children; that said slaves continued in possession of said Nancy and her children until January, 1829, when they were seized and levied on by a constable under a judgment against said William McLaurine as the latter's property; that said slaves were, against the will and consent of said Nancy, sold to one Patrick H. Braden to satisfy said execution; that Braden had notice of the claim of said Nancy and her children; that in said January, 1829, said Braden took possession of said slaves, and kept possession of them, together with two others born of said slave Nancy, until October, 1830, when he sold and delivered them to one William Monroe, who then and

there, secretly and without the knowledge or consent of complainants, brought said slaves to Morgan county, Missouri; that about the year 1836 said Monroe delivered said slaves to one William Harley; that said Harley has since appropriated and enjoyed the hire, labor and services of said slaves; that both Monroe and Harley had notice of the rights, interest and claim of complainants, said Nancy McLaurine and her children.

Complainants also set forth that in July, 1829, a suit in chancery was instituted in the circuit court of Giles county, Tennessee, to enforce the rights of the said Nancy McLaurine and her children under the deed above set forth against the said Braden and Hartan, the constable, and others; that in 1833 an amended bill was filed wherein they charged that since the institution of the said suit, in the year 1830, said Monroe confederated and combined with Braden to place said slaves beyond the jurisdiction of said court, and purchased them and brought them to Missouri, and praying that he might be made a party; that afterwards and after process had been issued and returned from and to said Tennessee court, and after said Monroe had been made and become a party, said court, in the year 1838, made a decree in favor of the complainants in said suit, adjudging that said deed did not convey to said William McLaurine any interest which was subject to execution to pay his debts, and that Braden purchased with knowledge of the title of the complainants, and decreeing that said Braden and Monroe should deliver said slaves to the complainants within a specified period or pay their value, $2,100, together with hire.

The complainants in the present suit make a transcript of the record in this Tennessee case, together with the deposition of Monroe on file therein, parts of their bill. They further state that said William Monroe died about the year 1847, intestate; that letters of administration were granted to his widow Lydia Monroe and his son Thomas Monroe. Complainants pray that said Thomas Monroe, Lydia Monroe, and said Harley be made parties defendant; that they be-

required to answer, &c.; that a decree be rendered against said defendants for the said slaves Nancy and her children, &c.

The defendant demurred to this bill. The court overruled the demurrer. The defendants answered separately. The court rendered a decree against the defendants Thomas and Lydia Monroe, as administrators, for $5,282. The court admitted in evidence, against the objection of defendants, a transcript of the record and proceedings in Tennessee.

*Adams*, for plaintiff in error.

I. The demurrer was improperly overruled. The questions raised by the demurrer were not waived by answering. The decree of the court of chancery in Tennessee is a complete bar to this suit. That court treated the case as one between the complainants as *cestuis que trust* and the defendants as trustees, and the complainants in that suit elected to take a decree against Braden for $2,100, the value of the slaves. They therefore waived all right to follow the slaves themselves into the hands of these parties in Missouri. Having made their election, they must stand by it. They can not insist upon opposite and repugnant rights. (2 Story Eq. § 1262.) Monroe's act in purchasing and bringing the slaves to Missouri, if wrongful at all, was a naked trespass. He was a stranger to the title claimed by McLaurine's children. They had an adequate and ample remedy at law for the supposed trespass. If they had any rights under the deed still subsisting, a court of law was the proper forum for redress. It is a naked case of trespass alone. If it can be brought in this court by merely joining the beneficiaries in a bill of complaint, then every trespass against trust property might be brought here to be tried. (Gibbons v. Gentry, 20 Mo. 477.) The answer of Braden in Tennessee is made a part of complainants' bill. Its allegations are not denied. It shows that the deed of gift to McLaurine's children was fraudulent and void as to his creditors, and therefore the execution sale of the slaves in Tennessee passed the title. (Broom's Legal

Max. 428.) The statute of limitations is a complete bar to the complainants' bill. More than five years had elapsed after the majority of some of the complainants and before the commencement of this suit. (20 Mo. 520; 4 Term, 516; 2 Mo. 348; 2 Taunt. 445.) Monroe was not a trustee. It is not a case between trustee and *cestui que trust* so as to prevent the statute of limitations from running. Monroe has never recognized any right in complainants. He treated the slaves as his own and sold them to Harley. In such case the statute is a complete bar. (Hill on Trustees, 378; 2 Eq. Cas. Abr. 579; Williams v. Otery, 8 Humph. 563; 2 Barr, 52; 5 Mo. 454.) Monroe's estate had been distributed. The distributees were proper and necessary parties. If the deed of gift to McLaurine's children is not held fraudulent and void as to creditors, a life estate thereby vested in McLaurine's wife, which was the subject of sale under execution for her husband's debts. The husband is the absolute owner of the wife's personal property or possession, legal or equitable. The life estate passed by the execution sale in Tennessee.

*Douglass & Hayden*, for defendants in error.

I. The decree was rendered at the April term, 1855, of the Morgan circuit court, and filed at the April term, 1857, *nunc pro tunc*. The bill of exceptions was not allowed and signed until the April term, 1858. It was not therefore filed in time, and should be stricken out. (Farrar v. Finney, 21 Mo. 569; Ellis v. Andrews, 25 Mo. 327.) It was competent for the court to allow the decree to be filed *nunc pro tunc*. (Hyde v. Curling, 10 Mo. 359; State v. Clark, 18 Mo. 432.) But if the bill of exceptions should not be stricken out, there will be no error found in the proceedings of the court below. The record of the suit in Tennessee was competent evidence, and the objection to its introduction being general and not specific, will not be noticed by this court. (Grim v. Gamache, 25 Mo. 41.) It is a rule in equity that all persons coming into possession of trust property with notice of

the trust, shall be considered as trustees, and bound with respect to that special property to the execution of the trust. (1 Pet. 309; 2 Madd. Ch. 125; Daniels v. Davidson, 16 Ves. 249.) William Monroe purchased the slaves *pendente lite;* and courts are not bound to take notice of any interest acquired in the subject matter of the suit pending the action. (1 Peters, 310.) An assignee *pendente lite* need not be made a party to a bill, or brought before the court, for every person so purchasing is treated as a purchaser with notice, and is subject to all the equities of the person under whom he claims in privity; and it matters not whether the assignee *pendente lite* be the claimant of a legal or an equitable interest, or whether he be the assignee of the plaintiffs or defendants. (Sto. Eq. Pl. § 156, 342, 348, 351; Sto. Eq. § 406, 908; 5 John. Ch. 93; 1 John. Ch. 578; 11 Ves. 194; 1 Sumn. 173; Osburn v. The Bank of the United States, 9 Wheat. 738.) This last case shows that a purchaser *pendente lite* is bound by the decree without being made a party; and bound by the answer of the defendant in the suit, as well as by the testimony in the case. So are privies in the estate claiming under such defendants. A subpœna alone is considered as *lis pendens*, and is notice to all persons, for otherwise the party might alien the property and baffle justice. This doctrine prevents purchases of litigated titles. (2 Madd. Ca. 325; 1 Verm. 318, 286, 57, 459; 3 Atk. 342.) The statute of limitations does not bar the plaintiffs' action. (R. C. 1825, p. ——, § 1; King v. Lane, 7 Mo. 242–3; 15 Mo. 211; R. C. 1835, p. ——, art. 3, § 11, 14, 16; R. C. 1845, p. ——, art. 2, § 5, art. 4, § 1; Manning v. Hogan, 26 Mo. 570.) As to the force and effect of judgments of sister states see Story on Confl. of Laws, § 584—610 inclusive; Warren & Dalton v. Lusk, 16 Mo. 102.

Scott, Judge, delivered the opinion of the court.

We do not see on what evidence the decree in this cause is founded. This is a proceeding under the old chancery system prevailing before the practice act of 1849, under

which, if the evidence did not warrant the decree, it would be reversed. The only evidence material to the issues was the deposition of Monroe and the record of the judicial proceedings in Giles county in Tennessee, neither of which was authenticated so as to be read, even had the record been .evidence for the purposes for which it was introduced. It is alleged in the bill that Monroe was not a resident of the state of Tennessee, and the process to bring him into court was returned not found; and it appears that afterwards there was an order of publication in the cause, but against whom it does not appear, as the transcript contains a mere minute that there was such an order. Now whether this action be a suit on the decree, or one to make Monroe liable here as trustee in respect to the slaves he is alleged to have removed from Tennessee, as he had no notice of the suit, it does not bind, nor is it any evidence against him. The decree in Tennessee is the only evidence on which the court below found the value of the slaves and their hire. As the decree on its face showed that it was not evidence, a general objection to the transcript being read was sufficient.

As to Monroe's being bound by.reason of his having become a purchaser *pendente lite*, that does not make him liable as a party to the decree. His purchase during the pendency of the suit might render the property subject to the execution or order of the court in Tennessee, but his mere buying the property does not make him a party to the decree in such way as will make it binding on him as a judgment to which he was a party. He may be sued here in respect to the trust property, and the *lis pendens* in Tennessee might be evidence, as he bought the property there, of notice of the trust; but as mere assignee *pendente lite*, how can the foreign decree affect him? It might affect the property were it in Tennessee, but can it be used here as a decree against him?

We said the *lis pendens* in Tennessee "might" be notice to a purchaser of the slaves of the equity of the complainants. The law in relation to the question whether movable personal property is subject to the doctrine of *lis pendens*

does not appear to be settled. There is certainly a leaning in the courts against its application to such property. The cases on this subject are referred to in the case of Winston v. Westfield, 22 Ala. 570. As the parties have not alluded to this question in their briefs, we will hazard no opinion in regard to it. (Murray v. Lilburne, 2 John. Ch. 444.)

By the eleventh section of the third article of the statute of limitations of the code of 1835, and the sixteenth section of the third article of the act of the code of 1845, the statute of limitations of 1825 applies, as the cause of action arose under that act. This act being that which controls the limitation to this suit, the plaintiffs are not barred. (King v. Lane, 7 Mo. 241).

The record does not sustain the objection that the bill of exceptions was filed at a term subsequent to the decree without the consent of parties entered of record. The last page of the record shows that the bill of exceptions was filed at the term during which the motion for a rehearing was overruled.

It appears from the record that the complainants made the answer of Braden to their bill in Tennessee against him a part of their bill in the present suit. Now if the answer of Braden to the bill of complainants in Tennessee is a part of their bill filed in this state, we can not see how they will get along with the case. That answer shows conclusively that the complainants have no cause of action, as it asserts that the deed under which they claim is fraudulent and void, having been made to defraud creditors and purchasers. There must be some mistake or misapprehension in relation to this matter. As we would not hold the parties to a slip of their counsel made through inadvertence and with no sinister view, this act may be obviated by an amendment.

We do not concur in the view of the defendants' counsel, that the decree taken in Tennessee against Braden is a discharge of this action against Monroe. Where there is a right of action against several, a mere judgment without satisfaction against one is no discharge of the rest. Nor

were the complainants confined to their action of trespass as their remedy. The complainants might have brought trespass, but they were not confined to that. They allege that Monroe has purchased from another property to which he had no right and with a knowledge of their claim to it. This makes Monroe a trustee in a court of equity for those whose property he purchased with notice of their rights. In cases of this kind an action of trespass and a bill in equity are concurrent remedies.

In our opinion, the deed of Madison McLaurine conferred no such interest on the wife of William McLaurine as was subject to execution. The legal title was not in her, and the slaves were merely left with her for the support of herself and children. A sale of the property was destructive of the purpose of the deed.

Reversed and remanded. The other judges concur.