COHEN & COMPANY *et al. vs.* MORRIS & COMPANY *et al.*

1. Where insolvent debtors have made an assignment for the benefit of their creditors, setting out in the deed of assignment the names of such creditors and the amounts due them, the persons so named are *cestuis que trust,* and although they may not be preferred creditors, they are interested in a just administration of the trust, and are entitled to equitable relief in case of mismanagement, waste or violation of the trust by the assignees.

2. If a trustee mismanages and wastes the property entrusted to him and persists in so doing, injunction and appointment of a receiver is the proper remedy.

(a.) The judgment of the court removing one of the assignees charged to be in full complicity with the debtors, investing the other with control of the property as receiver, and requiring a small bond of him, was a mild use of discretion.

3. Though a creditor may not have reduced his claim to judgment, yet where his debtors, who are insolvent both as a firm and individually, have set out his debt and the amount thereof in a deed of assignment made by them, and the debt is undisputed, he may assail the assignment as fraudulent, and may seek to set it aside as to property obtained from him by fraudulent representations. with which the assignees are connected.

(a.) In this case it is alleged that some of the goods covered by the assignment were never sold at all, but were delivered to the assignors for inspection and a selection of such as they would buy, and a recovery of these, or the proceeds thereof, is sought. Under the facts, the remedy is more complete in equity than at law.

(b.) Whether on the final hearing complainants can both attack the assignment as fraudulent, and also claim under it, or whether they will be compelled to elect between these two rights, is not now decided.

March 13, 1883.

Debtor and Creditor. Insolvency. Injunction and Receiver. Trusts. Equity. Fraud. Before Judge BRAN-HAM. Floyd County. At Chambers. January 4, 1883.

Morris & Company and other creditors of Cohen & Company filed their bill against the debtors, and M. A. Nevin and Z. Zacharias, as assignees of such debtors, and certain preferred creditors under the deed of assignment so made. The bill charged, in brief, as follows: The firm of Cohen & Company is insolvent and neither member thereof is solvent, allowing for exemptions, etc. The firm was composed of M. H. Cohen and Abram Zacharias. On December 4, 1882, they fraudulently executed a voluntary deed of assignment, by which they claimed to have transferred all of the firm property to the assignees named above, for the benefit of their creditors, certain preferences being given, and M. A. Nevin being the first preferred creditor. Z. Zacharias is a brother of Abram Zacharias and a brother-in-law of Cohen. Before the failure, he was nominally employed by the firm, but complainants believe that he was really a partner. By the terms of the deed of assignment, the assignees were directed to sell and dispose of the property, collect the debts and convert the assets into money. From the proceeds they were first to pay all the expenses, including attorneys' fees, due and to become due by Cohen & Company, or that might be incurred by Nevin and Zacharias in the execution of the trust. Certain creditors were preferred, and their claims were to be settled as fast " as the money may be realized." Most of these creditors are non-residents, and the validity of their claims is not admitted. The assignees are rapidly converting the assets into money in a wasteful and ruinous manner and at prices far below the actual value thereof, thus rendering the prospect of paying unpreferred creditors very small. The assignees have allowed the members of the insolvent firm to remain in the store and sell and receive the proceeds of sale as before the assignment. Various

false and fraudulent statements were alleged as made by the debtors in regard to their solvency, the business which they did, the amount of stock, etc., on the faith of which complainants sold them goods shortly before the assignment. All of the property of the debtors was not included in the assignment, but they have made fraudulent reservations, and the reservation of fees due and to become due, was an illegal reservation for their benefit. Neither are the assignees able to respond to a legal judgment for an abuse of their trust, nor are they solvent, after deducting the value of their homesteads. Two necklaces and three lockets were shipped by one of complainants to defendants for the purpose of making a selection therefrom, as they desired to purchase. No selection was made, but the property was retained, and not included in the schedule. There were other allegations not material here. The assignment attached to the bill shows a recognition of the claims of complainants. The prayer was that the assignment be declared void ; that complainants have judgment for their claim; that a receiver be appointed, who should take charge of the assets and reduce them to cash, and hold the proceeds subject to the order of the chancellor; that the defendants be enjoined from intermeddling with the assets, and for subpœna. Discovery was waived.

Defendants demurred and answered. The answers denied all charges of fraud, fraudulent representations, reservation of benefit by the debtors, waste or mismanagement by the assignees, and the other substantial grounds of equity alleged in the bill. Nevin alleged that he was not insolvent, but that his solvency was immaterial if he faithfully discharged his trust, which he proposed to do. Z. Zacharias made similar allegations, and it was denied that he had been a member of the firm, but alleged that he had only been called in at times to assist them. It was admitted that Cohen and Abram Zacharias had remained in the store to give information as to cost and value of goods, etc., with which they were familiar, but it was stated

that, in all cases, the money received by them from sales had been paid over to the assignees. The preferred claims were asserted to exist *bona fide*, especially as to Nevin, whose claim was alleged to be for money borrowed to aid in the business of the firm. The answers admitted the claims of complainants. On the subject of attorneys' fees, the answer of Cohen & Company asserts that they merely provided for the payment of the expenses of administering the trust out of the assets. In reference to the jewelry, the answer alleged that Cohen & Company had sold one of the chains and returned the other before the assignment, and that this was done *bona fide*.

On the hearing, numerous affidavits were introduced by both parties. It is only necessary to state that, from some of those on behalf of complainants, it appeared that one E. J. Zacharias stated that he had powers of attorney from all of the non-resident preferred creditors, authorizing him to represent them in connection with the assignment; and that this remark was made in the store of Cohen & Company after the assignment, and while Zacharias was acting as a clerk or salesman, if with no higher authority.

The chancellor removed Z. Zacharias, and ordered the assets to be turned over to Nevin, as assignee, who should proceed to sell the property for cash and hold the proceeds subject to the order of court. A bond of $2,500.00 was required of him. (The claim of complainants amounted to more than this, and the assets were several times as much.) The other defendants were enjoined from interfering with the property. Defendants excepted.

UNDERWOOD & ROWELL, for plaintiffs in error.

FORSYTH & HOSKINSON; LINTON A. DEAN; JUNIUS HILLYER; HAMILTON YANCEY, for defendants.

JACKSON, Chief Justice.

This is a bill filed by certain creditors of Cohen & Company against them and Zacharias and Nevin, their assignees

of all their stock of goods, etc., praying that the assignees be enjoined from proceeding with their trust, and that a receiver be appointed to take charge of it, etc.

1. The complainants are not judgment creditors, but they are *cestuis qui trust* under the deed of assignment, and in the schedule of creditors their names appear, and the amount of their respective debts. They are not preferred creditors, but interested in a just administration of the trust, the collection of assets, and the appropriation thereof, so as to have their share, if anything remains after the preferred creditors are paid. Equity has jurisdiction of this class of trusts as of all others. In Burrill on Assignments, 3d ed., chapter forty-four, par. 491, it is said that if the assignee be remiss in collecting and rendering the assets available, the proceeding is by bill in equity. And the same principle is announced in 2 Story Eq. Jur. §1047.

Indeed it must be so from the plainest reasoning. The creditors, whether preferred or otherwise, if named in the deed of assignment are *cestuis qui trust,* and the assignees are their trustees. Shall these trustees abuse their trust with impunity, mismanage and waste the only assets to which the creditor can look for payment, and is there no remedy for those in whose behalf the assignment was made? Could not one of the preferred creditors call these trustees to account; and if so, why should not one who, though not preferred, is interested in having all the assets collected and protected, that he may get a part of what remains after the preferred creditors are paid? But it is useless to press argument on the point, as this court has recognized the principle. 38' *Ga.,* 167, 170, 171. It is alleged here that one of the assignees is a near relative of the assignors, and has been clerk, if not partner; that both are selling the goods at inadequate prices; that the assignors and debtors take part in the sales; and that the whole management is contrary to right and wasteful of the assets entrusted to them for the benefit of complain-

ants; and particularly it is alleged that another Zacharias, the father of the discharged assignee, and of one of the assignors and the father-in-law of the other, is the attorney in fact of the non-resident preferred creditors, and receives and sends them, beyond jurisdiction of the court, the proceeds as fast as realized.

2. Have these complainants the right, thus being properly in a court of equity, to the strong equitable interference by injunction and receiver?

Upon principle, it would seem that they have. If a trustee mismanages the property entrusted to him, and is still persisting in the mismanagement of it, he ought to be stopped in some way from such mismanagement. How is his course to be arrested otherwise than by a writ of injunction restraining the wasteful and illegal conduct, or by a change of the trustee by appointing a receiver, an officer of the court, to take charge of the business and manage all under the supervision of chancery?

If the court of chancery may interpose at all with the management, it is quite certain that the court below exercised the power as favorably to the debtors and their assignees as could have been done. The order complained of removes one of the assignees who is intimately connected with the partners and charged to be in full complicity with them, and invests the other with the full control of it, appointing him receiver, and requiring a small bond in the sum of twenty-five hundred dollars from him. The assets are much larger, the debts very heavy, the debtors insolvent, the assignee removed equally so; and the order appears to us to be mild and discreet, oppressive to nobody, certainly not to the debtors and the remaining assignee appointed receiver. It can work no harm to any one interested, and brings the whole management under the eye of the court under the deed of assignment, so that the court may see that it is judiciously and honestly carried out by one of the trustees, who is merely converted into a receiver and is, in fact, a trustee still.

Before made receiver, he was subject as trustee to equit-able supervision; now he becomes a *quasi* officer of the court, and is subject to closer scrutiny. That is practically all the difference between the two characters he sustains to the *cestuis qui trust*, and this change became absolutely necessary to do equity. . Why retain the bill at all, if the proceeds of sale go beyond the jurisdiction of the court? These creditors have the right to attack the *bona fides* of the debts of those preferred. What good will that do, if the money be beyond the jurisdiction of the court, and they have it?

3. But this case, we think, rests upon another equity. The deed of assignment is assailed in so far as it reserves, through counsel fees, a benefit to the assignors, and because some preferred creditors have no just claims; and though these complainants are not judgment creditors, yet they are recognized in the deed as creditors, and the amount of their debts is also recognized therein. Their names ap-pear in the schedule, and the amount of the indebtedness of the debtors to them. So that, the amount being acknowledged by the debtors, there is no necessity for a judgment to fix that amount. As against partners, who are insolvent as a firm and individually. a general creditor who brings a bill for himself and all who choose to join, it is held in New York, may have the remedy by injunc-tion and receiver, as against the partners, assignees, and third persons, where the debt is undisputed, and the deed is assailed as made to hinder and delay creditors. 10 How. Pr. R., 225, 461; 15 *Ib.*, 395; 9 Ab. Pr. R., 127.

Besides, in the case at bar, it is alleged and proved by affidavits that as late as November, 1882, goods were sold by these complainants or some of them on representations of solvency by this firm; that these representations were dis-tinct as to the amount of indebtedness and the value of their property, and were false, and fraudulently designed to procure the goods of these creditors without paying for them; and the assignees are charged with complicity in

this matter; and thus no title passed. These facts, if true, bring the case within the ruling in *Cohen vs. Meyers, Cohen & Company,* 42 *Ga.,* 46, and subsequent cases.

Indeed, in respect to some of the goods delivered, jewelry, etc., it is alleged that the goods were not sold, but delivered for inspection and selection by the assignors, of such as they would buy, and these goods are set out in the bill appended; so that they can be identified, if a correct account of sales and what is sold be kept by the receiver. We think that, under an assignment of everything, these partners possess; all their stock on hand, made on the 4th of December, less than a month after the delivery of some of the goods of complainants; these specifications of the character of goods sold are sufficient, as charged, to identify them, if the assignors and assignees have managed their business properly and kept such books as they should have kept.

It is true that in the case in 56 *Ga.,* 144, this court held that, where goods were so sold, there was no lien; but in that case the title was not attacked, but the lien only insisted on. Here the title is attacked because of a purchase by fraud, which vitiated and annulled the title, as we understand the facts, and in some instances all semblance of sale is explicitly denied, and it is declared and sworn to, that the goods were merely delivered for inspection with a view to future purchase. And though no rescission of the sale be asked for in the first class of debts, that is, sale void for fraud, yet that is the necessary result of the bill, its allegations and prayers for such relief as equity can administer; and in the econd class, where no sale at all was made, but the goods sent for inspection merely, with a view to future purchase, of course no title passed, and those goods are the property of the complainants still, and the right to them, or their proceeds, if sold, would seem to be clearly in complainants; and to account for them, if on hand, or those proceeds, if sold by the assignees, this proceeding is more complete

and perfect a remedy, under the facts brought out in the evidence, than any remedy at law.

So in 56 *Ga.*, 427, there was no allegation or proof of title of any sort in the complainants before the chancellor (see p. 429 of opinion); and thus in that case, while the opinion shows equity in the bill, p. 430, the injunction was denied.

Therefore, we are led to the conclusion, after much deliberation, that this case comes within the spirit of the adjudications of this court in 42 *Ga.*, *supra*, and 57 *Ib.*, 247; and 58 *Ib.*, 50.

We are aware that there are some adjudications in other states to the effect that creditors cannot attack an assignment as fraudulent and void, and at the same time claim under it and call on the assignees to account to them; and perhaps, on the final hearing of this case, it may be necessary to confine complainants to the one or the other of the two aspects of the bill and depositions, either to a square attack on the deed of assignment, or to the equitable rights of the creditors for a strict accounting under it. On the question before us, however, the injunction and receiver and the cautious and prudent order of the chancellor thereon,—the affirmance or reversal of that order alone,—which is the sole question for adjudication now, it is unnecessary to enter upon this double aspect of the bill; and we express no opinion thereon. The chancellor, on that final hearing, will doubtless give such direction to the investigation as the rights of the parties, when all the facts are fully developed, shall require, according to the principles of equity and the practice in courts of chancery.

See further on the general subject, Burrell on Assignments, §§92, 93, 159, 165, 469; 3 Wis., 367; 30 Mo., 561; 20 Ark., 325; Perry on Trusts, §§817, 818; 9 N. Y. 176; High on Rec., 406, 407, 408, 409, 459, 460; 11 Md., 370; 1 Paige. 298; 8 *Ga.*, 511; 10 *Ib.*, 273.

Judgment affirmed.