PLUMMER et al. v. TROST, *Appellant.*

1. **Husband and Wife**: HER SERVICES RENDERED ANOTHER, WHEN HER SEPARATE EARNINGS. Services performed by a wife, for another for compensation, are presumed to be given on the husband's behalf. This was the case at common law and has not been changed by statute, and to rebut such presumption, the wife must show that the services were rendered under circumstances indicating an intention or understanding that she should receive the pay therefor.

2. **Partnership.** An agreement between the owner of a farm and another, by which the latter and his wife in conjunction with the owner shall work together on the farm, the proceeds of their joint

work and labor to be shared together, is a contract of partnership. It is not a contract for hire and wages, and cannot be sued on as such.

*Appeal from Jefferson Circuit Court.*—Hon. L. F. Dinning, Judge.

Reversed.

*W. H. H. Thomas* for appellant.

The court erred in refusing to instruct the jury, at the close of plaintiffs' case, that plaintiffs could not recover on the pleadings and evidence. Plaintiffs' evidence showed that Mrs. Plummer, when she rendered the alleged service for appellant, was the wife of Chris. Kleisner, and she earned no wages by her separate labor, as contemplated by section —, of an act in regard to married women, passed in 1875. Sess. Acts 1875, p. 61, § —. There should have been a contract with her, or husband, that she should perform the service, and enjoy the wages received as her own, or she should have performed the service under such circumstances as the court might infer she and husband both intended for her to receive and retain her wages for herself. Working in her husband's family, aiding him, and in conjunction with him, will not be sufficient to entitle her, under the above statute, to her separate earnings. *Reynolds v. Robinson,* 64 N. Y. 589; *Bean v. Kiah,* 4 Hun 171; *Adams v. Curtis,* 4 Lous. 164; *Fier v. Railroad Co.,* 49 N. Y. 47; *Kirkbeck v. Ackroyd,* 11 Hun 365; *Hazelboker v. Goodfellow,* 64 Ill. 238; *Lominer v. Kelly,* 10 Kas. 298; *McClusky v. Sav. Inst.,* 103 Mass. 300; *Kelly v. Drew,* 12 Allen 107; Wells' Separate Property of Married Women, §§ 126, 127, 128, and cases cited; *Hunt v. Spencer,* 20 Kas. 131; *Coughlin v. Ryan,* 43 Mo. 99; *Kidnell v. Kirkpatrick,* 70 Mo. 214; *Welch v. Welch,* 6 Mo. 57; *National B'k v. Sprague,* 5 C. E. Green.

*Byrnes & McMullin* for respondents.

PHILIPS, C.—This action was begun in the name of Katie Kleisner against the defendant. She having married, *pendente lite*, to J. B. Plummer, the action was continued in their joint names. The petition alleged that the defendant owed said Katie the sum of fifty dollars for money loaned him by her, also, that defendant owes her $330 for work done by her for defendant at his special instance and request. An account of these items was filed with the petition.

The answer tendered the general issue. It then pleaded that the plaintiff, Katie, at the time of the transactions in controversy, was the wife of Christ. Kleisner, and that she and her husband, with their children, came to defendant's home to live as members of his family, and for their services in and about the premises they should receive their board and bed, as also their clothing and medical attention. The answer tendered the issue that plaintiff being a *femme covert* could not recover for her services rendered to defendant.

The cause was submitted to a jury for trial. The only witnesses testifying to the arrangement between plaintiff and defendant were themselves. It appears that the plaintiff and her husband, Christ. Kleisner, lived in Ste. Genevieve county prior to January, 1876. They had a little home there, but were quite poor. They then had two children. According to plaintiff's testimony the defendant in 1875 wrote to them to sell out and come to his home and live with him. At first they declined, but finally consented after much solicitation on defendant's part. The letters were lost. Defendant's proposition to them was that if they would come they would work his farm and live together; that what they made together "we could have together, that what we could earn we could have." She denied that they were to work for defendant on the terms

428 SUPREME COURT OF MISSOURI,

alleged in the answer. She, also, stated that when they went to defendant's home he said he would build them a house and give them a piece of land, which he never did. She made proof of the reasonable value of her services. The evidence of plaintiff and other witnesses showed that she and her husband, in connection with defendant, carried on the farm, that the plaintiff worked constantly in the house as cook and otherwise, and, also, on the farm as a hand. They raised valuable crops, etc. While at defendant's home another child was born to her. The expenses of the entire household, which were comparatively inconsiderable, were borne by defendant. Nothing was paid her or her husband by defendant for their labor. They worked for him from January, 1876, to February, 1879, when the husband died. She continued to work there until July, 1879, when she left. She, also, stated that $50, which was a part of the proceeds of their farm, sold in Ste. Genevieve county, they loaned to defendant. Defendant's testimony tended to sustain the allegations of his answer. The jury found the issues for the plaintiff and returned a verdict for the sum of $168. After an ineffectual effort for a new trial, the defendant appealed to this court.

I. We do not see how this judgment can stand. The plaintiff, Katie, at the time of rendering the services sued for was a married woman, with the exception of about five months. At common law the wages for the services of the wife belonged to the husband. Schouler H. & W., 294, 295. The presumption is, that any services performed by the wife for another for a compensation, are rendered on the husband's behalf. It is, therefore, incumbent on the wife to show that the services were rendered under circumstances indicating an intention or understanding that she should receive the pay therefor. *Morgan v. Bolles*, 36 Conn. 175, 176. Even under statutes so far innovating upon the common law as to enable married women to hold in their own right property acquired by purchase, grant or gift, the earnings of the wife are not drawn within its operation by implication. *Rider*

*v. Hulse,* 33 Barb 264; *Bear v. Hays,* 36 Ill. 280; *Hoyt v. White,* 46 N. H. 45. The act of 1875 (Laws of Missouri, 1875, pp. 61, 62) provides that: " Any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture by gift, bequest or inheritance, or by purchase with her separate money or means, or be due as the wages of her separate labor, etc., shall    *    *    be and remain her separate property." While this statute gives the wife her wages, it is to be observed that it is limited to the wages " of her separate labor." The very foundation, therefore, of her right to such wages depends upon the fact whether the services were for her "separate labor." Under similar statutes allowing the wife her earnings, the accepted construction is, that when her labor is performed on account of, or in connection with the husband, or is bestowed on his business, or where there is nothing in the terms or circumstances of the contract to indicate an intention or purpose to concede to her the fruit of the given labor, the statute does not apply. *Beau v. Kiah,* 4 Hun 171; *Reynolds v. Robinson,* 64 N. Y. 589; *Hazelbaker v. Goodfellow,* 64 Ill. 238.

While the husband may, by his assent, concede to the wife the wages of her labor, so that she may hold it even against his creditors, yet where the work and business are carried on by husband and wife in co-operation, the labor of the husband being united with that of the wife, the business and its proceeds will be regarded as belonging to the husband. It will be subject to his debts and, on his death, pass to his administrator. *National Bank of the Metropolis v. Sprague,* 5 C. E. Green 13. Where the husband and wife are living together and mutually employed in providing a support for themselves and children, and there is neither any express agreement, nor anything to indicate at the time an intention on her part to separate her earnings, and nothing to indicate an assent of the husband thereto, the right of property and action therefor, belong to the

husband. *Birkbeck v. Ackroyd*, 74 N. Y. 356. See, also, Wells Sep. Prop. Mar. Wom. §§ 127, 128; *McCoy v. Hyatt*, 80 Mo. 130, and authorities cited therein. There is nothing in the facts of the case under consideration to except it from the operation of these principles. The proposition of defendant for the services of Kleisner and wife was made to the husband. It was, according to plaintiff's own testimony, the joint labor of husband and wife contracted for, and not the separate services of the wife. Their remuneration was to come from the joint product of their united labor and husbandry. Her testimony was that defendant said "he could not afford to hire hands and pay them every month cash, but he said we should work together, and what we raised together we should have together, and we could have what we could earn." It then was a joint contract by which husband and wife, in conjunction with defendant, were to carry on the farm, and they were to have an interest in what all together produced. Was this arrangement anything more or less than a partnership between the defendant and husband for farming together and sharing the proceeds according to labor and production? How is it permissible for the wife in the form of action adopted in this case to recover in view of such a contract? The action is for a *quantum meruit* for the reasonable value of her services. It is true a party may sue on a *quantum meruit*, and the disclosure at the trial of a specific contract will not defeat his action. *Mansur v. Botts*, 80 Mo. 651. But the contract when developed on trial will control and limit the amount and character of the recovery. *Ib.*

Under the contract testified to by the plaintiff the compensation for the labor of herself and husband, was what they could raise together, or earn out of the farming business. It was not a contract for hire or wages. Would there not, therefore, have to be an accounting between the parties to ascertain what the result of the joint adventure was, beyond expenditures, before any judgment could be rendered against defendant? It is true that for about five

months after the husband's death the plaintiff continued to work on the premises. But there is no evidence that this was under any other arrangement than the one under which she first went to defendant's home. The law presumes, in such case, that she remained under like terms of compensation, if any, for her services. So far as the $50 sued for are concerned, there was no evidence that the money was the separate property of the wife. The right of action, if any, therefore, survived to the administrator of the husband. The evidence in this record shows that the plaintiff, especially, and her husband worked faithfully and well, and performed valuable services for the defendant, and it would be a hardship if the husband's estate should not be compensated. But redress must be sought through legal remedies.

It follows from the foregoing conclusions, that the instruction asked by defendant at the close of plaintiffs' evidence, in the nature of a demurrer to the evidence, should have been given.

The judgment of the circuit court is, therefore, reversed and the cause remanded. All concur.