GLENN, *Trustee*, v. HUNT, *Executrix, Appellant*.

### Division One, February 19, 1894.

1. **Practice: DEPOSITIONS: COMMISSION.** A commission to take depositions in another state may be issued without notice to the opposing party that application would be made therefor, as such commission, on proper application, issues as a matter of right. (R. S. 1889, sec. 4435).

2. ———: ———: ———: **INTERROGATORIES.** Nor is it necessary that interrogatories be annexed to the commission.

3. **Evidence: STATUTE OF SISTER STATE.** A book containing the title: "Acts of the General Assembly of the state of Virginia, passed in 1865-66, 89th year of the Commonwealth, Richmond: Allegre & Goode, Printers, 1866," is competent evidence in a court of this state to prove a law of Virginia, since Revised Statutes, 1889, section 1835, provides that printed volumes purporting to contain the laws of a sister state shall be admitted as *prima facie* evidence of the statute of such state.

4. ———: ———. Such book was admissible in evidence though not certified to by the secretary of state of Missouri or of Virginia as required by Revised Statutes, 1889, section 4832.

5. Corporation: SUBSCRIPTION TO STOCK. The promoters of a proposed Virginia corporation agreed that the capital stock should be $5,000,000. The executive committee, about a month before the defendant's testator made his subscription, passed a resolution to increase the capital stock to $10,000,000, but the resolution was not approved and the change was not made. No misleading information was given out by those in charge of the organization and the testator could easily have informed himself of the failure to make the change in the amount of the capital stock. *Held* that he subscribed without condition as to the proposed increase.

6. ———: UNPAID SUBSCRIPTION: SEVERAL LIABILITY: FORMER ADJUDICATION. Where the statute makes both the assignor and assignee of corporate stock each liable for any installment which has or may accrue on the stock assigned, thus creating several liabilities, a judgment without satisfaction against one will be no bar against the other for the same installment.

7. ———: TRUSTEE OF EXPRESS TRUST. Where a Virginia corporation assigned to trustees for the benefit of creditors all its property and rights, including remainders due from stockholders, a decree of the Virginia court substituting plaintiff as trustee for the old trustees makes him the trustee of an express trust within Revised Statutes, 1889, section 1991, authorizing said trustee to sue in his own name without joining with him the person for whose benefit the suit is prosecuted.

8. Practice: INSTRUCTION: HARMLESS ERROR. Error in sending additional instructions to the jury after the case has been submitted will not cause a reversal where such error is not prejudicial.

*Appeal from St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED.

*C. M. Napton* for appellant.

(1) The court erred in overruling the motion to suppress the Smoot deposition; section 4435, Revised Statutes, 1889, requires a *dedimus.* See *Seymour v. Farrell*, 51 Mo. 95. (2) The trial court also erred in

admitting the two volumes as evidence of the laws of Virginia. *State v. Williamson*, 57 Mo. 199. (3) Col. Hunt was released from liability upon his subscription by a material change in the charter of the proposed company. The charter passed by the Virginia legislature December 12, 1865, takes the act of March 22, 1861, as a basis, but incorporates a company with $5,000,000 capital. See sec. 2, p. 37, of said pamphlet. Prior to this, November 1, 1865, the public were notified that the company "is just organized" and Hunt must have thought he was subscribing to company with $10,000,000; *i. e.*, a company with a capital large enough to transact the business proposed. Hunt never knew of the change, or the only evidence bearing on that point is that shortly after the legal organization he transferred his stock to Jas. H. Lucas, and got out of it, or thought he did. *Railroad v. Hughes*, 22 Mo. 291; *Livingston v. Lynch*, 4 J. C. R. 573; *Railroad v. Croswell*, 5 Hill, 383; *Turnpike v. Locke*, 8 Mass. 268; *Turnpike v. Swan*, 10 Mass. 384; *Canal Co. v. Towne*, 1 N. H. 49; *Turnpike v. Phelps*, 2 Penn. 184; Angell & Ames on Corp. [3 Ed], 483; *Davis v. Hawkins*, 3 Maule & S. 488; *Winter v. Railroad*, 11 Ga. 451; In *Ins. Co. v. Beckman*, 47 Mo. 97, the court expressly held (p. 97 *ad fin.*) that the liability of the defendant did not arise by virtue of that particular amendment, nor did it appear that it was in any way affected by it; hence that decision is not in point. (4) A subscriber for stock is released from his subscription by a subsequent alteration of the plan of organization, which materially and fundamentally changes the nature of the obligation of the subscriber. *Nugent v. Supervisors*, 19 Wall. 251, cases cited; *Co. v. Chapman*, 38 Conn. 56; *Clark v. Co.* 10 Watts, 364; *Co. v. Quick*, 23 N. J. L. 321. (5) The judgment in the case of *Glenn v. Lucas*, was a bar to this action. (6) A receiver can not sue

in a foreign jurisdiction for the property of the debtor. *Ins. Co. v. Needles*, 52 Mo. 17; *Naylor v. Moffett*, 29 Mo. 126; *Booth v. Clark*, 17 How. (U. S.) 322; *Holmes v. Sherwood*, 3 McCrary, 407. There is a contrary view expressed by Judge ROMBAUER in *Glaser v. Priest*, 29 Mo. App. 1. But he is overruled by the supreme court in the cases cited above and below. The doctrine is borne out and shown to have the support of the best authority. High on Receivers [2 Ed.] sec. 47. (8) The court erred in giving additional instructions to the jury after they had retired to consider their verdict, and the instructions so given were erroneous.

*T. K. Skinker* for respondent.

(1) The motion to suppress Smoot's deposition was properly overruled. It was taken under sections 4435–4442, Revised Statutes, not under sections 4448–4452. *Shepard v. Railroad*, 85 Mo. 629. (2) The Virginia Session Acts of 1861 and 1865 were properly received in evidence. R. S., sec. 4835; *Cummings v. Brown*, 31 Mo. 309; *Williams v. Williams*, 53 Mo. App. 619; Best on Evidence [Chamberlayne's Ed.], p. 457, note *f*. Carey's testimony was properly received to show that the books used in evidence are received as law in Virginia. *Spaulding v. Vincent*, 24 Vt. 501; *The Pawaschick*, 2 Lowell, 142; *Barrows v. Downs*, 9 R. I. 446; *Church v. Hubbart*, 2 Cranch, 237; Story, Confl. Laws, sec. 641; *Ennis v. Smith*, 14 How. 400. (3) Defendant's testator was not released from liability by reason of any material change in the charter. There was no such change as is claimed. But if there had been it would not have affected the stockholder's liability. *Railroad v. Renshaw*, 18 Mo. 210. Besides, Hunt accepted the stock, paid calls on it, held it six months and sold it. It is now too late to repudiate it. *Haskell*

*v. Worthington,* 94 Mo. 560; *Ins. Co. v. Beckmann,* 47 Mo. 97; *Eaton v. Aspinwall,* 19 N. Y. 119; *Deaderick v. Wilson,* 8 Baxter, 128; *Railroad v. Hatch,* 1 Disney, 84; *O'Donald v. Railroad,* 14 Ind. 259; *McCarthy v. Lavasche,* 89 Ill. 270; *Rice v. Railroad,* 21 Ill. 93; *May v. Railroad,* 48 Ga. 109; *Lime Co. v. Green,* L. R. 7 C. P. 43.

MACFARLANE, J.—This is an action by plaintiff, as trustee of the National Express and Transportation Company, to recover from the estate of Charles L. Hunt, deceased, calls aggregating eighty per cent. on fifty shares of the capital stock of said company of the par value of $100 per share. The petition charges that in the year 1865 Charles L. Hunt, defendant's testator, subscribed $5,000 to the capital stock of said company, which is a corporation under a special act of the legislature of Virginia; that said subscription was subject to call by the directors of the corporation; that calls, one of thirty and the other of fifty per cent., had been made by a decree of the chancery court of Richmond, instead of the directors, as the corporation had become insolvent and plaintiff had been appointed to collect the assets and settle its affairs. Judgment was asked for the amount of the two calls and interest, twenty per cent. of the original subscription having been paid.

The answer is a general denial and a special plea to the effect that C. L. Hunt never subscribed to the stock for himself, but that it was subscribed in his name; that he shortly afterwards transferred it to Jas. H. Lucas; that this plaintiff had sued the heirs of Jas. H. Lucas upon this liability for subscription to this same stock; that in this action there was judgment for defendant, and this judgment is pleaded in bar of the present action. There are other special pleas which are not here insisted upon as defenses. The replication denied the new matter.

Preliminary steps for the promotion of the corporation were taken at Richmond, Virginia, in September, 1865.   The plan was to make an act of the legislature of that state, passed March 22, 1861, the basis of the corporation, (the object of which was to organize a national express company) with an increase of the capital stock to $5,000,000.   It was afterwards, on October 12, 1865, resolved by an executive committee, previously appointed, that the capital stock should be increased to $10,000,000, and that subscriptions to that amount be received, subject to ratification of the next general meeting of stockholders.   This resolution was not approved by the meeting of stockholders held October 30, 1865.   At this meeting it was resolved that the name of the corporation be changed to .the National Express and Transportation Company.   On December 12, 1865, the amended charter was passed by the legislature.   By the amended charter the name was changed as proposed, and the capital stock was made $5,000,000, subject to be increased from time to time by order of the board of directors to any sum not exceeding $10,000,000.   It was authorized to do business as soon as one-third of the capital stock should be subscribed, and $100,000 paid in.   In the meantime subscriptions had been taken until the amount actually subscribed amounted to about $4,300,000.   Of this amount Charles L. Hunt subscribed for 50 shares amounting to $5,000.   The books of the company show that this subscription was made November 1, 1865, and was credited with $11 per share on it.   The books further show that on May 29, 1866, this stock was transferred to James H. Lucas.

In September, 1866, the corporation, having become insolvent, made an assignment of all its assets to certain trustees named therein, for the benefit of its creditors, with authority and directions to the trustees

to collect all debts, claims and moneys payable, and apply the same to the liquidation of its debts.

In 1871 a suit was commenced in the chancery court of Richmond, Virginia, by Wm. W. Glenn, a judgment creditor, against the company and the trustees, which, in 1880, resulted in removing the original trustees and appointing plaintiff in their stead. It was decreed that the deed of trust was valid and authorized the trustees to collect unpaid subscriptions for stock, only twenty per cent. of which had been paid. A call was thereupon made upon the stockholders for the payment of thirty per cent. of the par value of the stock subscribed, or held by them, respectively. On the twenty-sixth day of March, 1886, a further call of $50 per share was made. This suit, commenced in February, 1887, was to recover from defendant's testator the amount due under the two calls.

I. Previous to the trial defendant moved the suppression of a deposition, taken in another state, upon the ground that the commission authorizing the deposition to be taken, was issued by the clerk of the court, without notice, and without having interrogatories annexed thereto. The motion was overruled and the deposition was read on the trial.

The statute does not require that the opposite party shall be given notice that application would be made for a commission to take depositions of witnesses residing out of this state; nor has it generally been the practice to give such notice. The commission is issued, as a matter of right, by the court or clerk, upon a proper application therefor under section 4435.

Neither do sections 4435, 4438 and 4439 require interrogations to accompany the commission. The commission is the only authority necessary to empower the officer to examine such witnesses as may be named

by the party "suing for the same." That the examination may be general, and not confined to interrogations, is apparent from the language of section 4439, which authorizes the officer to examine the witness "touching his knowledge of anything relating to the matter in controversy." Another section of the statute (4448) makes provision for obtaining from the court, or the judge thereof in vacation, a special commission which requires that notice of the application shall be given the adverse party, and that interrogatories be annexed to such commission, but plaintiff did not proceed under this section of the statute. The court correctly ruled on the motion.

II. In order to prove certain statute laws of the state of Virginia, plaintiff offered to read from two books, one of which contained this title: "Acts of the General Assembly of the State of Virginia, passed in 1865–66, 89th year of the Commonwealth, Richmond: Allegre & Goode, Printers, 1866." The other contained a similar title. Defendant objected that the books from which plaintiff offered to read were not properly authenticated as containing the laws of that state. The objection was overruled and the acts were read in evidence.

We do not think the court committed error in this ruling. Section 4835, Revised Statutes of 1889, provides: "The printed volumes purporting to contain the laws of a sister state or territory shall be admitted as *prima facie* evidence of the statutes of such state or territory." The first objection made to the admissibility of this evidence is, that it does not appear, from the title, that the volume was printed by authority of the state of Virginia. But the statute does not require that it should so appear. It is only required that the volume should purport to contain the laws of the state of Virginia; and this one clearly does so. This

is the construction heretofore given our statute.    *Cummings v. Brown*, 31 Mo. 309; *Williams v. Williams*, 53 Mo. App. 623.

A second objection to the admissibility of the evidence is, that the volume was not certified to by the secretary of state of either the state of Virginia or of this state, as required by section 4832, which provides: "Copies of any act, law, resolution or constitution, contained in any printed statute book of a sister state or territory, shall be received in any of the courts of this state as *prima facie* evidence of the act, law, resolution or constitution contained therein: *Provided*, the secretary of state of such state or territory, or the secretary of state of this state, shall certify that the same is a correct copy, under his hand and seal of office, and shall set out in his certificate, in full, the title page of such printed book."

We do not think that the proviso of this section was intended to limit or qualify the force and effect of section 4835. It will be seen that several sections of our statute, making printed statutes, books and copies of acts, laws, etc., admissible as evidence of the laws of the United States, and of sister states and territories, are grouped together, but each is independent of the other. All were passed, in the revision of 1879, as one revised law, and no question of the repeal of one by the other can arise, but all should be so construed as to stand together. Nor do we think sections 8535 and 8532 inconsistent with or repugnant to each other. The former applies to printed volumes of other states, while the latter applies to copies of acts, and laws contained in printed statutes of sister states which alone require authentication by the secretary of either this state, or of the state of which the copy purports to be a law. The requirement that the certificate of the secretary "set out in full the title page of such

printed book" shows very clearly that section 4832 refers only to a certified copy of a law, and not to the book from which the law may be copied.

III. It is insisted that when defendant's testator subscribed to the capital stock of the proposed corporation, he did so with the understanding and agreement that the capital stock thereof should be $10,000,000, and that accepting a charter with a capital stock of only $5,000,000, was such a material change of the conditions, upon which he subscribed, as released him from liability upon his subscription.

Defendant's testator subscribed to fifty shares of the stock on November 1, 1865. So far as appears he received all his information respecting the proposed corporation, its purposes and the amount of its capital stock, through circulars sent out from Richmond giving detailed accounts of the progress of the enterprise, and the steps taken by those acting as an executive committee. At the time Mr. Hunt subscribed no charter had been secured. No condition was attached to his subscription. The original agreement, among the promoters, was, that the capital stock should be $5,000,000. On October 12, 1865, the executive committee passed a resolution declaring that the capital stock should be increased to $10,000,000. This resolution was made subject to the ratification of the general meeting of the stockholders to be held on October 30, 1865. At that meeting the resolution was not approved, and no further steps were taken looking to an increase of the capital stock above the amount first agreed upon.

If Hunt had information of the resolution of the executive committee, when he subscribed, he must have known also that it was subject to ratification by the stockholders' meeting, which had then already been held. There was no evidence that any false or misleading information was given out by those in

charge of the organization. There was, in fact, no change in the amount of the capital stock, but a failure in an attempt to make a change. Of this failure the subscriber could have advised himself. In these circumstances it must be held that the subscription was made to the stock of the proposed corporation, without condition as to what had been the act of the stockholders in respect to the proposed increase.

IV. Suit for the unpaid calls on this stock was in the first instance brought against Lucas, to whom Charles L. Hunt assigned his stock. This suit resulted in a judgment for defendant. The next inquiry is whether the judgment is a bar to this action. The Virginia statute declares: "No stock shall be assigned on the books without the consent of the company, until all the money which has become payable thereon shall have been paid; and on any assignment, the assignee and assignor shall each be liable for any installments which may have accrued or which may thereafter accrue, and may be proceeded against in the manner above provided."

When Charles L. Hunt became an original stockholder in this corporation, and when James H. Lucas became one by assignment from him, each took his rights, as such, with reference to the laws of the state of Virginia, its domicile, and each assumed all the liabilities legitimately imposed by such laws. *Railroad v. Gebhard,* 109 U. S. 537; *McKim v. Glenn,* 66 Md. 485; *Glenn v. Liggett,* 135 U. S. 533.

The statute makes the assignor and assignee each liable for any installment which has, or may accrue, on the stock assigned, thus creating several liabilities, and a judgment for or against one would be no bar to an action against the other for the same installments. Under the statutes of Missouri, in all cases, even of joint obligations, suit may be brought and prosecuted

against any one or more of those who are liable.   Sec. 2387.   A judgment against one or more of such joint debtors, without satisfaction, creates no bar , to an action against the others.   *McLaurine v. Monroe's Adm'rs*, 30 Mo. 462; *Bank v. Cottey*, 70 Mo. 150.   It was held in *Glenn v. Foote*, 36 Fed. Rep. 824 by WALES, J., that a release of the assignee of stock in this corporation, upon part payment of an installment, did not operate as a release of the assignor, the obligations being several.   The judgment in favor of Lucas was no bar to this action.

V. It is insisted that a trustee, appointed by the chancery court of Virginia, acquired no right thereunder to maintain an action in this state.   It has, it is true, been so held in respect to the right of receivers to prosecute suits beyond the territorial jurisdiction of the court appointing them. *Insurance Co. ex rel. v. Needles*, 52 Mo. 17; High on Receivers, sec. 47.   But we do not think this trustee acquired his rights solely from the decree of the chancery court of Virginia.   The corporation assigned all its property and effects to certain trustees who thereafter held it in trust for the benefit of its creditors.   The rights thus assigned included the balances due from stockholders on their stock.   The decree did not take the property of the corporation into the custody of the court, to be administered by it, as in case of a receiver, but simply substituted Glenn as trustee, in place of the old trustees,. who were relieved of their trust.   He took title under the deed of trust and can not be regarded as a mere officer of the court.   The decree substituting a trustee expressly invested him "with all the rights and powers," and imposed upon him "all the duties of executing the trusts of said deed, to the same affect as were the original trustees therein."   In an exhaustive opinion by EWING, C., it was held by this court that a voluntary

assignment for the benefit of the creditors of the assignor, made in another state, will pass to the assignee personal property situated in this state. *Askew v. La Cygne Bank,* 83 Mo. 366.

In considering the powers and duties of this substituted trustee the court of appeals of Maryland held that, as to all choses and rights of action, pertaining to the trust, the decree passed the right thereto to the new trustee as fully as the original trustees held it; that he needed no formal assignment thereof from the original trustees; the decree itself operated as an assignment. *Glenn v. Williams,* 60 Md. 119. To the same effect see *Glenn v. Soule,* 22 Fed. Rep. 417; *Lewis' Adm'r v. Glenn,* 84 Va. 974.

Our conclusion is that the substituted trustee, under the decree, became the trustee of an express trust and was authorized, under our statute, to maintain this suit in his own name. R. S. 1889, sec. 1991.

VI. After the cause had been argued and submitted to the jury, the court, upon written request of the jury, and against the defendant's objection, sent to their room this additional instruction:

"The court instructs the jury that the date of the first call or assessment sued for is December 14, 1880, and the date of the second call is March, 1886, and the rate of interest to which plaintiff is entitled is six per cent., to run on $1,500 from December 14, 1880, and on $2,500 from March 26, 1886."

Defendant assigns as error the action of the court in giving this instruction. The advice asked by the jury, in response to which the instruction was given, was "as to the dates of the calls of the two assessments, and in case of a verdict for the plaintiff, what the rate of interest should be."

In the case of *Chouteau v. Jupiter Iron Works,* 94 Mo. 400, after a review of the authorities, it was held

that all communications between the court and jury,
after a case had been submitted to the jury, and while
they were deliberating upon it, should be in open
court.   In that case it is said: "It is the province and
duty of the trial court to aid the jury by giving them
proper instructions, and if they do not understand the
instructions given, or if some point about which they
should be instructed has been overlooked, or some mis-
take made in the instructions given, the jury may be
called to the bar of the court and proper instructions
may be given." See, also, *Norton v. Dorsey*, 65 Mo.
376; *State v. Miller*, 100 Mo. 623. We find no case in
this state which justifies a trial court in giving addi-
tional instructions, after the cause had been argued and
submitted to the jury, unless it be done in open court,
so that the parties or their attorneys may have oppor-
tunity to be heard. The giving of instructions is a part
of the judicial proceeding and for that reason should be
done in open court.   The fact that counsel is present,
and is advised of the action of the judge, unless he
consents thereto, does not give sufficient grounds for
disregarding this rule.

While we think the court committed error in send-
ing this communication to the jury, was it such preju-
dicial error as should reverse the judgment? The
statutes declare that a judgment shall not be reversed,
unless error, materially affecting the merits of the
action, was committed. R. S. 1889, sec. 2303. The
advice asked by the jury was not in reference to any
controverted fact the jury was required to decide.
There was no dispute about the dates of the respective
calls, and the rate of interest was fixed by the law. The
fact and the law, therefore, communicated to the jury,
were both undisputed, and there could have been no
prejudice to defendant in the instruction given. The
case was fairly tried and, under the evidence, but one

result could have been reached.    Judgment affirmed. All concur, except BARCLAY, J., who is absent.