HENDRICKS, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, April 2, 1907.

1. **DEPOSITIONS:** Narrative Form. A motion to quash a deposition on the ground that the testimony was taken in narrative form was properly overruled. It is not necessary that depositions should be taken upon interrogatories.

2. ———: Special Commission: Discretion of Court. The statutes authorize two methods of taking depositions in another State, first by suing out a commission and delivering it to the officer before whom the depositions are to be taken and such officer

after proper notice has been served, may examine the witnesses and write down the testimony (sections 2878, 2882, Revised Statutes 1899), or they may be taken by special commission in which interrogatories are settled by the court, (section 2891, Revised Statutes 1899). In the first method the commission issues as a matter of right, in the second it is discretionary with the court.

3. **HUSBAND AND WIFE: Personal Injuries to Wife: Elements of Damage.** In an action for personal injuries brought by a married woman, she can not recover for impairment of her ability to work where her work was in keeping house, such damage can only be recovered by the husband; but where in addition to her household work she took orders for fancy work during her leisure moments, the impairment of her ability to earn money by that means was a proper element of damage, although she used the money thereby earned in keeping up the household expenses; the money thus earned was her own to use as she pleased.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Boyle & Priest, J. W. Jamison* and *John T. Gose* for appellant.

In this State a married woman living with her husband cannot recover for loss of earnings. Plummer v. Milan, 70 Mo. App. 602; Plummer v. Trost, 81 Mo. 428; Ross v. Kansas City, 48 Mo. App. 446; Wallis v. Westport, 82 Mo. App. 527; Smith v. St. Joseph, 55 Mo. 456; Blair v. Railroad, 89 Mo. 334; Cullar v. Railroad, 84 Mo. App. 347; Rogers' Domestic Relations, sec. 235; Bishop's non-Contract Law, sec. 542; Schouler on Husband and Wife, secs. 143, 294, 295; Kroner v. Transit Co., 80 S. W. 916; Newell v. Transit Co., 84 S. W. 195.

*Joseph Wheless* for respondent.

Depositions may be taken in the narrative form when the adverse party, though notified, did not appear at the examination. 9 Am. & Eng. Enc. Law (2 Ed.), p.

335, n1; Pralus v. Mining Co., 35 Cal. 30; *In re* Thomas, 35 Fed. 822; Myers v. Murphy, 60 Ind. 282; Grissen v. Southworth, 64 Hun (N. Y.) 488. The instruction K allowed plaintiff to recover for "loss of earnings of her labor, and the impairment of her ability to work and earn money;" defendant's instruction X refused, being merely the negative of plaintiff's instruction K given. Cullar v. Railway, 84 Mo. App. 351; Wallis v. Westport, 82 Mo. App. 527; Kroner v. Transit Co., 107 Mo. App. 46; Newell v. Transit Co., 108 Mo. App. 532; Ashby v. Gravel Road Co. (Mo. App.), 85 S. W. 959; so likewise in respect of expenses of nursing, etc. Kaiser v. Transit Co. (Mo. App.), 84 S. W. 199.

STATEMENT.—On the morning of August 18, 1904, plaintiff, a married woman sixty-seven years of age, in company with nine of her friends, male and female, desiring to attend the Louisiana Purchase Exposition at St. Louis, placed themselves at the corner of Delmar and DeBaliviere avenues, in said city, for the purpose of boarding one of defendant's cars running over DeBaliviere avenue to the exposition grounds.

Plaintiff's evidence shows that she and her friends were in the proper place to be received by defendant on its cars and that a car stopped for the purpose of affording them an opportunity to get aboard; that the car was not crowded, and three women of the party got aboard in safety; that plaintiff followed them and was in the act of getting aboard, had hold of the handrail with her right hand, with one foot on the lower step, when, in response to a signal given by the conductor, the car was started with a sudden jerk, causing plaintiff's foot to slip off the step; that to save herself from falling on the street, she held to the handrail with her right hand and was dragged some eight or ten feet, when her hold gave away and she fell upon the street.

The evidence shows that the conductor was on the

back platform of the car, facing plaintiff, when he gave the signal to start the car. The evidence also shows that as a result of falling and being dragged by the car, plaintiff's right shoulder was severely sprained, the ligaments and muscles controlling the movements of the arm at the shoulder being torn from their moorings. The evidence further shows that plaintiff suffered excruciating pain, was for weeks unable to sleep, except when under the influence of opiates; that she still suffers more or less pain from the injury and is unable to move her arm at the shoulder, and that this condition will in all probability continue during the remainder of her life. Plaintiff testified that she is a married woman, and before her injury, besides attending to her household duties, earned about ten dollars a week doing fancy needlework, and that she applied her earnings to the payment of household expenses, her husband being without means and too old and feeble to work.

Defendant's evidence tends to show that the car was crowded, and after it had stopped to let passengers off, and after two or three had crowded on, the conductor called out to the others waiting to "take the next car," and at the same moment gave the motorman the signal to go ahead. The conductor testified that he did not see the plaintiff until she fell on the street. Some of defendant's witnesses testified that plaintiff and others ran after the car after it had started and that plaintiff attempted to get on the car while it was in motion.

The jury found the issues for plaintiff and assessed her damages at twenty-five hundred dollars. A motion for new trial proving of no avail, defendant transit company appealed.

BLAND, P. J. (after stating the facts).—1. Depositions of witnesses residing in the State of Kentucky were taken in narrative form. Defendant moved to quash these depositions because they were not taken on

interrogatories.  The court overruled this motion and
the depositons were read in evidence.  This ruling is
assigned as error.  There is no rule of law that requires
the evidence of witnesses in a civil or criminal case to be
taken on interrogatories.  It is a common practice to
take the evidence of witnesses in the form of questions
and answers, but there is no rule enforcing any such
practice, nor is it generally preferable to the narrative
form.  The principal objection to the latter form is that
a witness, uninstructed, is prone to relate immaterial or
irrelevant matter.  This, however, may generally be
avoided if counsel, in apt terms, directs the witness's at-
tention to the issue or issues upon which his evidence is
desired.  There are two methods, under the laws of this
State, by which the deposition of a witness in another
State may be taken by any officer authorized by the laws
of this State to take such a deposition.  First, by suing
out of the court or out of the office of the clerk of the
court where the suit is pending, a commission to take
the deposition and delivering it to the officer therein
named as authorized to take the same (R. S. 1899, sec.
2878).  When the officer receives the commission he is
authorized, if proper notice of the time and place of tak-
ing the deposition has been served upon the opposite
party, to cause to come before him such persons as the
party suing out the commission may name and to exam-
ine them touching their knowledge of anything relating
to the matter in controversy (R. S. 1899, sec. 2882).
This method was the one adopted for taking the deposi-
tions of the Kentucky witnesses and is the one generally
used where the object is to examine the witnesses, gen-
erally, touching their knowledge as to any or all the
issues in the case. Under this section (2878) the commis-
sion issues as a matter of right, and interrogatories need
not be attached. [Glenn v. Hunt, 120 Mo. 330, 25 S. W.
181.]  The second method is to give notice to the oppo-

124 App.—11

site party of the time and place when application will be made to the court where the case is pending or to the judge thereof, in vacation, for a special commission to take depositions (R. S. 1899, sec. 2891). If the court or judge issues the commission, interrogatories are settled by the court or judge when the commission is issued and must be attached to it (R. S. 1899, sec. 2893). The witness or witnesses are named in the interrogatories and their examination, of course, must be confined to the interrogatories attached to the commission. The granting of this special commission is not a matter of right, but rests largely in the discretion of the trial court or judge. [Shepard v. Railway, 85 Mo. 629.]

2.   Over the objection of defendant, the court instructed the jury as follows on the measure of damages:

"If the jury find for the plaintiff you will assess her damages at such sum as you may believe from the evidence will be a fair compensation to her.

"1.   For any pain or anguish of body or mind which the jury may believe from the evidence she has suffered and with reasonable certainty will suffer in the future, if any, from her injuries and directly caused thereby.

"2.   For any loss of the earnings of her labor, already suffered, if any, and such as with reasonable certainty she will suffer in the future from the impairment of her ability to work and earn money, if the jury shall believe from the evidence that she has or will suffer any such impairment of ability as the direct result of her injuries, in all not to exceed the sum of $4,500."

The second paragraph of this instruction authorized the jury to award plaintiff damages for any loss of earnings, past or future. Plaintiff testified that she lived with her husband and kept house for him; that he was old and infirm, unable to work and without means, and that their children were all grown up; that she had no occupation other than keeping house and doing fancy work, had no store or shop but went out and took or-

ders for fancy work and did the work at her home during idle hours when not engaged in her household duties, and that she used her earnings to keep up household expenses, "used them altogether in the house in keeping up family expenses." From this evidence it is apparent that plaintiff worked as an aid in the service of her husband for the support of the family, therefore, the loss is, in contemplation of law, the loss of the husband for which he alone can sue.

In Plummer v. Trost, 81 Mo. l. c. 429, the court, referring to the statute giving a married woman the wages of her separate labor, said:

"While this statute gives the wife her wages, it is to be observed that it is limited to the wages 'of her separate labor.' The very foundation, therefore, of her right to such wages depends upon the fact whether the services were for her 'separate labor.' Under similar statutes allowing the wife her earnings, the accepted construction is, that when her labor is performed on account of, or in connection with her husband, or is bestowed on his business, or where there is nothing in the terms or circumstances of the contract to indicate an intention or purpose to concede to her the fruit of the given labor, the statute does not apply. [Beau v. Kiah, 4 Hun 171; Reynolds v. Robinson, 64 N. Y. 589; Hazelbaker v. Goodfellow, 64 Ill. 238.]"

The Plummer Case is approvingly cited in Plummer v. City of Milan, 70 Mo. App. l. c. 603.

Rogers, in his work on Domestic Relations, section 235, says:

"At common law there is no difficulty in solving the question who is entitled to the earnings and services of the wife during the coverture. These clearly belong to the husband. But under statutes enlarging her common law rights the difficulty is greater. These statutes, however, are not construed, as a general rule, so as to enlarge or modify the common law rule further than is

necessary to give proper effect to the statutes. The doctrine seems to be, therefore, that the earnings of a married woman belong to her husband, though the local law may authorize her to act as a sole trader, and contract, sue and be sued with reference to her separate property, where the earnings are not connected with, and do not arise out of, her separate estate or business."

Perrigo v. St. Louis, 185 Mo. 274, 84 S. W. 30, was a suit by a married woman to recover damages for personal injuries, caused by a defective sidewalk. At pages 288-9, the court said:

"It is true that the evidence discloses the fact that the plaintiff is a married woman, but it also discloses the further fact she was engaged in the business of running a boarding house in which she did her own work and that her husband was a cripple who did only such 'chores' incident to the business as he was able to do. Under our statute a married woman 'is deemed a *feme sole* so far as to enable her to carry on and transact business on her own account,' in whom is also vested a right of action for any money due her as 'the wages of her separate labor' or has grown out of any violation of her personal rights.' The impairment of her ability to work in the business she was conducting would seem to be a proper element of her damages for the injury which caused it."

Under our statute and decisions construing the same, any wages earned by a married woman by her separate labor, not pertaining to her ordinary household duties, are her separate property, and it is no concern of the courts how she spends such earnings. They are hers to dispose of as she will, and if by an injury she is rendered unable to perform such separate labor by which she theretofore earned wages or received compensation, the particular loss is hers and not her husband's. These views, we think are supported by Perrigo v. St. Louis, supra, and that the second paragraph of the in-

struction on damages is supported both by the law and the evidence.

The judgment is affirmed. All concur.