THE FARMERS & TRADERS BANK, a Banking Corporation, Appellant, v. MARTHA KENDRICK and JOHN BARRON.—108 S. W. (2d) 62.

Division One, July 30, 1937.

*J. B. Gallagher, Roy D. Williams* and *W. W. Carpenter, Jr.,* for appellant.

*Embry & Embry* for Martha Kendrick.

574

DOUGLAS, J.—This is an action to set aside the deed of R. L. Kendrick and wife dated April 12, 1932, conveying to John Barron 240 acres of land in Cooper County and to set aside the deed of John Barron of the same date conveying the same land to R. L. Kendrick and Martha Kendrick, his wife. In other words, Barron was the conduit through which title was transferred by the husband to the husband and wife as tenants by the entirety. Barron filed no answer. The case was tried as though Martha Kendrick was the sole defendant and we shall refer to her as such. On the death of the husband on June 14, 1933, his widow, the defendant, became vested with title to the land. On the affidavit of the widow that her husband left property of the value of only $550 the probate court entered an order refusing letters of administration on his estate.

R. L. Kendrick, the husband, while the owner of the land, borrowed sums of money from plaintiff evidenced by his promissory notes dated December 30, 1929, and May 10, 1930, for $1233 and $550 respectively, which notes were renewed from time to time. He also obtained a loan from the Citizens Bank of Clarksburg, evidenced by his promissory note dated July 14, 1931, for $525 which note was assigned to plaintiff.

Plaintiff exhibited its claim based on the notes of Kendrick to the probate court which refused to take any action because of its order previously entered. Thereupon, this suit was filed. The chancellor dismissed plaintiff's bill and plaintiff appealed.

Respondent contends and the chancellor decreed that the appellant cannot maintain this action because it had not reduced its claim on said notes to judgment nor is an attaching creditor and has not thereby exhausted its remedy at law.

The general rule of law is that a simple creditor cannot main-tain a suit in equity to set aside a conveyance of a debtor as fraudulent until his demand has been reduced to judgment. [Daggs v. McDermott, 327 Mo. 73, 34 S. W. (2d) 46, and cases cited therein.] However, we have recognized that there are exceptions to this general rule as where the defendant is wholly insolvent and therefore it would be useless to proceed at law. [Hume v. Wright (Mo.), 274 S. W. 741; Davidson v. Dockery, 179 Mo. 687, 78 S. W. 624.] This exception apparently springs from the doctrine that equity never requires a vain act to be done and therefore when it appears that to sue at law would be impossible or unavailing it will not be required. [State ex rel. Taaffe v. Goggin, 191 Mo. 482, 90 S. W. 379.] The remedy at law must be adequate and by this is meant that it must be clear, complete and as practical and efficient to the ends of justice and its proper administration as a remedy in equity. [Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073.]

There is another and well-recognized exception to the general rule that a general creditor of a decedent without first having obtained a judgment at law, either against the debtor in his lifetime or against his estate as a demand, may proceed to set aside in equity a fraudulent conveyance. [103 A. L. R. 555, note.] Particularly is this true where the correctness of the claim is admitted or is not denied. [Kennedy v. Creswell, 101 U. S. 641; D. A. Tompkins Co. v. Catawba Mills, 82 Fed. 780; Cohen & Co. v. Morris & Co., 70 Ga. 313; Goldman Commission Co. et al. v. Williams et al., 211 Fed. 530.] In Nieters v. Brockman, 11 Mo. App. 600, without stating the facts of the case, the court said that a creditor need not reduce his claim to judgment before proceeding in equity to subject real estate fraudulently conveyed to the payment of his demand where there is no dispute as to the claim and where the debtor died notoriously insolvent; and that in such a case the creditor is not bound to cause letters of administration to be taken out before proceeding in equity to have the fraudulent deed set aside.

The execution of the notes in question is admitted in defendant's answer. After a general denial the answer sets up an affirmative defense admitting the notes were executed, but after the date of the conveyances. Admissions and confessions in an answer pleaded as an affirmative defense control and take precedence over so much of the answer as consists of a bare general denial. [Fleming v. Contracting Corp. (Mo. App.), 45 S. W. (2d) 952; Dickey v. Porter, 203 Mo. 1, 101 S. W. 586; P. M. Bruner Granitoid Co. v. Glencoe Lime & Cement Co. (Mo. App.), 187 S. W. 807.]

The undisputed evidence shows that the husband's debt to plaintiff was created long before the conveyances in question, although some of the notes were renewed after said date. We have held that a renewal note is a continuance of the original indebtedness. [Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673; Lynes v. Holt-Taylor Mercantile Co. (Mo. App.), 268 S. W. 703.] The notes evidencing such indebtedness were identified and admitted into evidence. There was no evidence whatever on defendant's part disputing or denying such indebtedness. ██ There was evidence introduced showing that deceased's estate was insolvent and on the oath of the defendant to that effect an order of refusal of letters of administration was granted by the probate court. Defendant asserts that plaintiff should have filed its application with the probate court to set aside the order refusing letters of administration. This would have been a vain act.

Section 2, Revised Statutes 1929, provides that such order refusing letters of administration may be revoked upon application of a creditor or other party interested upon the showing of the existence of other or further property. There is no evidence here of any other property belonging to the deceased. We hold that the plaintiff is entitled as a simple creditor to bring this suit.

██ The deeds conveying the property recited a consideration of $4000 but the undisputed evidence is that no consideration passed. In order to supply consideration for the deeds defendant states that she had $150 at the time of her marriage and received during coverture through inheritance a total sum of $147.47, all of which she turned over to her husband, and which he reduced to his possession without her written consent. It is evident that this alone would not furnish consideration for the transfer of property appraised at from $4500 to $7200 after the homestead is deducted. However, defendant claims as a further consideration for the transfer of the property to her that her husband was indebted to her for the proceeds of the sale of eggs and poultry during the years 1917 to 1929, totaling $13,282.55 which he also reduced to his possession without her written consent, and which she claims as her separate earnings.

It is true that if the wife is a *bona fide* creditor of her husband he has a legal right to prefer her over other creditors. It is also the law that transactions between husband and wife to the prejudice of the husband's creditors are looked upon with suspicion and their good faith must be clearly shown. [Friedel v. Bailey, 329 Mo. 22, 44 S. W. (2d) 9.]

After a careful reading of the evidence in this case we cannot agree with the learned chancellor that the indebtedness from the husband to defendant was valid, *bona fide* and just, in that the proceeds from the sale of the poultry constituted separate wages or

the income of a separate estate of the defendant upon which her husband had no claim.

In discussing what constitutes separate property and wages from separate labor, this court said in Plummer v. Trost, 81 Mo. 425, 1. c. 429:

"Where the husband and wife are living together and mutually employed in providing a support for themselves and children, and there is neither any express agreement, nor anything to indicate at the time an intention on her part to separate her earnings, and nothing to indicate an assent of the husband thereto, the right of property and action therefor, belong to the husband."

And, in Hendricks v. Transit Company, 124 Mo. App. 157, 101 S. W. 675, the St. Louis Court of Appeals quoted with approval Rogers on Domestic Relations, section 235:

"These (married women's) statutes, however, are not construed, as a general rule, so as to enlarge or modify the common-law rule further than is necessary to give proper effect to the statutes. The doctrine seems to be, therefore, that the earnings of a married woman belong to her husband, though the local law may authorize her to act as a sole trader, and contract, sue, and be sued with reference to her separate property, where the earnings are not connected with, and do not arise out of, her separate estate and business."

Married women's acts have not repealed the duty of service owed by a wife to a husband correlative with that duty owed by a husband to a wife. [In re Estate of Wood, 288 Mo. 588, 1. c. 601, 232 S. W. 671.]

The evidence shows that defendant and her husband were married in 1907 at which time her husband owned eighty acres of land; that her occupation thereafter was described as "raising chickens, raising a family, milking cows and all such as that;" that starting with three old hens, and three settings of eggs, until 1917 there was no evidence of the sale of poultry; but thereafter and through 1929, according to memoranda kept by defendant, the total gross sales of chickens, turkeys and eggs amounted to $13,282.55; that her husband and their five children born of the marriage all worked together in taking care of and in marketing the poultry and eggs; that the proceeds were collected by her husband or children and all deposited to her husband's account in the bank; that from time to time the size of the farm, where all lived together and where all the poultry was raised, gradually was increased to 240 acres; that the husband was almost constantly in debt and expected to pull out of debt with the help of the proceeds from the poultry; that all the feed for the poultry was furnished by the husband. There is no testimony of a single independent act on the part of the defendant indicating any intention to separate these proceeds as her own. From this evidence,

can it be said that defendant did more than to assist her husband in the discharge of those duties and obligations which arise out of the marital relation or were more than the ordinary services a farmer's wife renders her husband and family? Here is a "dutiful housewife making common cause with her husband in struggling for the betterment of themselves and their children" and a case where a wife's separate estate or her transacting a separate business is not involved.

Much of her testimony objected to below must be disregarded as incompetent under Section 1723, Revised Statutes 1929. To support her claim that there was a *bona fide* consideration for the conveyance she must prove her deceased husband's debt to her, about which she is not competent to testify. [Roethemeier et al. v. Veith, 334 Mo. 1030, 69 S. W. (2d) 930.] The remaining evidence is neither substantial nor sufficient to justify her claim that these proceeds were derived from her separate estate.

The evidence further discloses that the debtor, after the conveyance of his land, was insolvent and the said conveyances were made without consideration so that they are fraudulent in law and void against existing creditors. [Godchaux Sugars, Inc., v. Quinn (Mo.), 95 S. W. (2d) 83; Friedel v. Bailey, supra, and cases therein cited.]

So much of the property as constituted the homestead is exempt from the rights of creditors and became and remains vested in the defendant, Martha Kendrick. [Hauser v. Murray, 256 Mo. 58, l. c. 87, 165 S. W. 376.] The conveyances as to the balance of the property should be set aside as fraudulent against the plaintiff.

For the reasons stated the decree below is reversed and the cause remanded for further proceedings not inconsistent with this opinion. All concur.