474

### Max German, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 107894.   Promulgated July 23, 1943.

*William H. Charles, Esq.*, *Stanley S. Waite, Esq.*, and *Earl Susman, Esq.*, for the petitioner.

*Gene W. Reardon, Esq.*, for the respondent.

478

## OPINION.

TURNER, *Judge:* Petitioner contends that a partnership in which he and his wife were equal partners was created in 1924 for the purpose of acquiring and operating the fruit and vegetable business on Kingshighway; that this partnership also developed, built up, and has continuously operated the ham business; and that the respondent had erred in determining that the entire income from the ham business was his income instead of one-half of such income.

From the inception of the income tax there have been numerous cases in which husband and wife have claimed that the business from which the family sustenance was derived and on which the well-being of the family depended was a partnership business and the income therefrom divisible between them for income tax purposes. In most such cases, the claim of partnership has been preceded by and based upon formal written agreements of partnership, but in many of them the claim has fallen because there has been no actual participation or contribution on the part of the wife in services, capital, management, or otherwise, so as to give reality and substance to the partnership claimed. *Thomas M. McIntyre*, 37 B. T. A. 812; *Robert S. Eaton*, 27 B. T. A. 283; affd., 100 Fed. (2d) 1013; certiorari denied, 307 U. S. 636; *Tinkoff* v. *Commissioner*, 120 Fed. (2d) 564; *Mead* v. *Commissioner*, 131 Fed. (2d) 323; certiorari denied, 318 U. S. 777; *Earp* v. *Jones*, 131 Fed. (2d) 292; certiorari denied, 318 U. S. 764; *Schroder* v. *Commissioner*, 134 Fed. (2d) 346. The instant case, in some respects at least, presents a contrary picture. Here there was no formal written agreement of a partnership until after the taxable year, but the evidence does show that the ham business as it existed and was carried on during the taxable year was the result of the joint efforts of the petitioner and his wife in prior years. We would be unable to say on the record before us that the petitioner worked any harder or more effectively than his wife in the fruit and vegetable business, or in the ham business prior to the move of the latter business from their home on Lisette Avenue to the Cote Brilliante Avenue location in 1929 or 1930, and it is certainly from the fruits of those early efforts that the ham business as it existed thereafter and during the taxable year derived much of its substance.

While admitting that no written partnership agreement existed prior to January 2, 1940, the petitioner argues that execution of the writing did not mark the beginning of the partnership claimed, but was evidence of a partnership which had existed from the time of the purchase of the fruit and vegetable business in 1924, and under which that business, the delicatessen business, and the ham business were and have been conducted. We are not at all impressed, however, with any claim that petitioner or his wife had any thought or idea that they had established or were conducting a business partnership as distinguished from a marital or family enterprise, until they became tax conscious and sought and received advice from an attorney. It was then that the partnership agreement was formulated and drawn and petitioner and his wife, for the first time, began to think of the ham business in terms of separate and individual interests such as are present in the ordinary business partnership. It is true that in the course of their testimony both petitioner and his wife stated that they understood and considered that they were operating on a "fifty-fifty basis," but on cross-examination, petitioner explained their understanding as follows:

Q: You referred to an oral agreement or understanding that you had with your wife. Just when was that reached?

A: It was reached, I guess, when we got married. We just understood that we were working together. We later bought this store and handled everything together and just kept moving up that way.

Q: What was the understanding?

A: The understanding was that she could buy, write checks, make contracts, or anything that was for the welfare of the both of us, and I would do the same thing.

Q: In other words, everything you had was hers, and vice versa?

A: Yes, sir.

Q: You didn't have any other understanding, other than this general understanding; is that correct?

A: That is right.

Max and Rose German were thinking of their relationship and interests as husband and wife, or as a family, and not as business partners would do. We think the same holds true of Rose German's father and mother when they made the $500 loan for the purchase of the fruit and vegetable business in 1924. Our question then is whether, on the facts here, the business producing the income having resulted from the joint efforts and labors of petitioner and his wife, it follows as a matter of law that the said income is divisible between them for Federal income tax purposes because of their individual rights in and to the business, whether the basis of those rights be that of partners or not.

The rationale of the respondent's argument is not too clear or definite and the factual basis for some of his conclusions not too

apparent. In the main, however, the argument seems to be that the evidence fails to show "the amount of capital, if any, contributed by petitioner's wife to the business enterprise"; that she contributed neither capital nor services of any substance to the enterprise as it existed in 1939; that petitioner was in absolute control of the business and ownership of the business assets was vested solely in him and the entire income was therefore taxable to him.

It is perfectly clear that the capital of the ham business came from and represented profits derived from the fruit and vegetable business, probably the delicatessen, and from prior operation of the ham business itself. If therefore it may be said that Rose German, as part earner of those profits, was the owner of a share of the profits which remained in and provided substance for the business as it existed in the taxable year, then certainly Rose German was a contributor to the capital vested and risked in the enterprise. See and compare *Berkowitz* v. *Commissioner*, 108 Fed (2d) 319, and *Richardson* v. *Helvering*, 80 Fed. (2d) 548. And, being a contributor with her husband to the enterprise wherein they stood to win or lose together, it would appear, under *Champlin* v. *Commissioner*, 71 Fed. (2d) 23, that she would be entitled to a proportionate share of the profits.

Under the Missouri statutes a married woman may carry on and transact business and contract and be contracted with as a *femme sole*. Sec. 2998, p. 5055, vol. 7, Missouri Statutes, Ann. And it is well settled that she can contract with her husband with the same freedom as with others. *Rice, Stix & Co.* v. *Sally*, 176 Mo. 107; 75 S. W. 398; *O'Day* v. *Meadows*, 194 Mo. 588; 92 S. W. 637; *Crenshaw* v. *Crenshaw*, 276 Mo. 471; 208 S. W. 249. It is also provided that all real estate and personal property which may have come to a married woman during coverture "by gift, bequest or inheritance, or by purchase with her separate money or means, or be due as the wages of her separate labor, or has grown out of any violation of her personal rights, shall, together with all income, increase and profits thereof, be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband." It is further provided, however, that the provision just quoted shall not affect the title of the husband to any personal property reduced to his possession with the express assent of his wife. This latter provision is subject to a proviso that the personal property shall not be deemed to have been reduced to the possession of the husband unless the assent of the wife, "in writing," shall give full authority "to the husband to sell, encumber or otherwise dispose of the same for his own use and benefit." Sec. 3003, p. 5064, vol. 7, Missouri Statutes, Ann.

While under the Missouri statutes the husband, not the wife, may recover damage due to injuries sustained through negligence of a third party to the extent that such damages are based on her inability to

perform her domestic duties, *Twedell* v. *City of St. Joseph*, 167 Mo. App. 547; 152 S. W. 432, the wife, not the husband, is entitled to damages due to her inability to render services outside of her household or family duties, even though the services by which the damages are measured may have been rendered in the husband's business and without compensation. *Kirkpatrick* v. *Metropolitan Street Railway Co.*, 129 Mo. App. 524; 107 S. W. 1025. For other cases in which the wife prevailed, see *Hendricks* v. *Transit Co.*, 124 Mo. App. 157; 101 S. W. 675; *Otto F. Stifel's Union Brewing Co.* v. *Carroll*, 223 S. W. 732; *Malone* v. *Harlin*, 220 Mo. App. 102; 278 S. W. 806; *Perrigo* v. *St. Louis*, 185 Mo. 274; 84 S. W. 30; *Rogles* v. *United Railways Co.*, 232 S. W. 93; *Crump* v. *Walkup*, 246 Mo. 266; 151 S. W. 709; and *Dollins* v. *Robinson*, 236 S. W. 1063. In *Plummer* v. *Trost*, 81 Mo. 425, where recovery was denied to the wife for services rendered by her in conjunction with her husband to a third party, it was pointed out that there was "nothing in the terms or circumstances of the contract to indicate an intention or purpose to concede to her the fruit of the given labor" and that the statute did not apply. In *Farmers & Traders Bank* v. *Kendrick*, 108 S. W. (2d) 62, another case in which the wife did not prevail, the suit was brought by a creditor of the husband to set aside, as having been without consideration and in fraud of creditors, the conveyance of the farm formerly standing in the name of the husband to himself and wife as tenants by the entirety. The wife defended on the ground that certain amounts deposited in the husband's bank account and used by him were her separate earnings and to that extent she had received only what was rightfully hers. The services upon which her claim was based were described as "raising chickens, raising a family, milking cows and all such as that." It was shown that some $13,000 had been realized over a period of years from the sale of poultry and eggs. In denying the claim of the wife, the court said there was no testimony indicating "a single independent act on the part of the defendant [the wife] indicating any intention to separate" the proceeds from the sale of poultry and eggs as her own.

While there is no showing in the instant case that petitioner's wife had any intention of separating her earnings in the fruit and vegetable business and later the ham business from those of her husband, it does appear that at all times she retained control equal in every respect to that of her husband over the earnings resulting from their joint efforts. From the beginning the only bank account or accounts have been joint, and while it might be argued that the primary purpose for the establishing of a joint bank account was to facilitate the conduct of the business and not to indicate ownership of the deposits therein, the joint bank accounts have been continued

over the years and even after Rose German ceased to participate regularly and actively in the conduct of the business. All of the money drawn down, with the exception of the weekly allowances to the petitioner and other amounts which may have been drawn from time to time for family uses, have been drawn jointly or in equal amounts. Some of such withdrawals have been made for the purpose of buying investment property, and in each and every instance the record shows that title to the property so purchased has been taken in the joint names of the petitioner and his wife. It is apparent therefore that at no time was there any reduction to the possession of the petitioner of any part of the earnings of Rose German from the services rendered by her in the ham and predecessor businesses, such as would be required under section 3003, *supra*, of the Missouri Statutes, Annotated, in order to defeat her separate rights therein.

From the above, we think it follows that to the extent the earlier profits, which made up or constituted the capital of the ham business, represented the separate earnings of Rose German she was a contributor to the capital of the enterprise and to the extent the 1939 profits are attributable to the capital so contributed by her they are her profits and not those of the petitioner. It does not follow, however, that she and the petitioner were contributors to the capital of the ham business as it existed in 1939 in equal shares. From the beginning of the fruit and vegetable business until the move of the ham business to Cote Brilliante Avenue in 1929 or 1930, we think it clear that the services rendered by Rose German were equal to those of the petitioner and to the extent that the capital of the ham business as it existed in 1939 was drawn from profits realized prior to that move she was an equal contributor. After the move, however, her work in the business gradually decreased, until in 1939 she worked only in case of emergency. It does not appear that her services during the later period were on a parity with those of the petitioner, and, to the extent that the capital of the business as it existed in 1939 was drawn from those profits, she was not an equal contributor. Furthermore, the record amply shows that the profits of the ham business and its predecessor businesses were attributable not to the use of capital alone, but to a very substantial degree to the personal services rendered in connection with the management and operation of those businesses. In 1939 the bulk of such services were rendered by the petitioner, the activities of Rose German being limited to emergencies. The record does not contain the facts or figures from which the capital contributed by Rose German or the profits allocable to her may be computed or determined with any exactness, but, having concluded that she did contribute capital to the enterprise and that by reason of such con-

tribution and such services as she may have rendered some of the profits for 1939 were hers and not those of the petitioner, it is incumbent upon us to determine the extent thereof as best we may on such facts as we do have. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. Making due allowance for the fact that in 1939 Rose German devoted very little time to the business and that its management and operation in that year were almost, if not wholly, due to the services rendered by the petitioner, and bearing in mind the facts relating to the contributions to capital, it is our conclusion that an allocation of 75 percent of such profits to the petitioner and the remaining 25 percent to Rose German is reasonable and proper. We accordingly hold that the respondent erred in determining that the entire amount of income from the ham business during the year 1939, instead of 75 percent of such income, was the income of the petitioner.

*Decision will be entered under Rule 50.*