William J. Hirsch v. Commissioner.
Hirsch v. Commissioner
Docket No. 2185.
United States Tax Court
1945 Tax Ct. Memo LEXIS 358; 4 T.C.M. (CCH) 4; T.C.M. (RIA) 45002; January 3, 1945
Edward J. Loring, Esq., for the petitioner. Harold H. Hart, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent has determined a deficiency in income tax for the year 1941 in the amount of $2,525.29. Petitioner agrees to certain adjustments. Two adjustments are contested, giving rise to two issues which are set forth hereinafter. Petitioner filed a separate return with the collector for the district of Minnesota. Issue I Findings of Fact The Anchor Laundry Company, a Minnesota corporation, conducting a laundry business in Minneapolis, was dissolved on or about July 14, 1941. At the time of the dissolution, petitioner was the owner of 85 shares of common stock, the certificates therefor standing in his name. Petitioner acquired this stock in small lots at various *359 times from 1928 to 1935 at a cost of $8,500. At the time of the dissolution of the corporation the total outstanding stock, having a par value of $100 per share, consisted of 158 shares of preferred stock and 87 shares of common stock. In addition to the above 85 shares, petitioner owned a one-half interest in one share of common stock. All of the assets of the corporation were transferred to petitioner and his wife under a bill of sale and a deed in which they are referred to as "husband and wife as joint tenants and not as tenants in common." In his income tax return for 1941, petitioner did not report any gain or loss from the surrender of stock of Anchor Laundry Company owned by him. Respondent determined that petitioner realized a short term capital gain of $34.75, in connection with the one-half interest in 1 share; and a long term capital gain of $2,953.87, in connection with the 85 shares, and increased his taxable income accordingly. In the petition filed in this proceeding, petitioner did not allege error in the determination made relating to the one-half interest in one share of common stock, but he alleged error in the determination that petitioner realized a long-term *360 capital gain. The determination by the respondent of the realization of gain upon the surrender of 85 shares of common stock was made as follows: Value of assets received
$14,407.74
Cost of 85 shares
8,500.00
Total gain
$ 5,907.74
Taxable gain, section 117,
I.R.C. 50%
$ 2,953.87
In his petition, petitioner alleged, as the facts upon which he relied, that "The book value of the assets transferred to this petitioner in exchange for 85 shares of common stock amounts to $14,407.74. The fair value of such assets is not more than $8,500. The cost of the stock is as follows: * * * $8,500. There was no profit to petitioner on liquidation." Petitioner at the hearing, through his counsel, stated, "We concede the correctness of the Government's figures and they can be considered as $14,407.74. No testimony will be offered on the valuation." Opinion From the above statement of the pleadings on this issue and the concession by petitioner at the hearing, there cannot be any doubt that petitioner has abandoned this issue by virtue of failure of proof, if not otherwise. On brief, petitioner asserts that the issue has not been conceded, and he contends that he was *361 not the sole owner of the 85 shares of stock, and he contends that said stock was paid for out of funds of his wife as well as out of his own funds. He contends that although the stock certificates for 85 shares were in his name alone, Ann O. Hirsch was an "equal owner" of these shares. This issue must be decided against petitioner. Not only is his theory not clear but there is no evidence to show that the cost to petitioner of the 85 shares of common stock standing in his name was not $8,500, as petitioner stated in his petition. No amendment to the petition was filed. It now appears that petitioner would have the taxable longterm capital gain allocated equaly between petitioner and his wife, although no claim is made to that effect in petitioner's briefs. If such should be done, which we are not required to determine under the circumstances, it would be impossible to make findings of fact on petitioner's cost. There is no evidence to show what part of the cost of the 85 shares of common stock was paid out of petitioner's own funds, if it is a fact that any part of the total cost was paid out of the wife's separate funds. Petitioner has failed to prove the source of the $8,500 which *362 was used to purchase the stock. Under this issue, respondent's determination is sustained. Issue II Findings of Fact Petitioner was the president of Anchor Laundry Co., Inc. in 1941 and owned 85 shares of the common stock. His wife, Ann O. Hirsch, was vice-president and owned one share of common stock. F. A. Anderson was secretary and owned one share of common stock and 95 shares of preferred stock. Anderson, an elderly gentleman, wished to retire from the business and he agreed to sell his preferred stock to petitioner and his wife at $100 per share. They borrowed $9,500 from a bank, both signing the note, and purchased Anderson's stock. Certificates for 47 shares of preferred stock stood in the joint names of petitioner and his wife. At some time before July 1, 1941, the owners of 16 shares of preferred stock endorsed their certificates in blank or to W. J. Hirsch and Ann O. Hirsch. At a meeting of stockholders held on June 30, 1941, petitioner surrendered all of the certificates for all of the common and preferred stock for cancellation. He and Ann O. Hirsch agreed to assume all of the liabilities of the corporation and a resolution was adopted to execute conveyances of *363 all of the assets of the corporation to petitioner and Ann Hirsch as joint tenants. It was understood that the business would be continued without interruption under the management of petitioner and his wife. The corporation conveyed all its property an assets, real and personal, under a warranty deed and a bill of sale on July 1, 1941, to "W. J. Hirsch and Ann Hirsch, husband and wife as joint tenants and not as tenants in common". Thereafter the corporation was dissolved. On July 1, 1941, petitioner filed a certificate of business name with the clerk of the District Court of Hennepin County in which he stated that a business was conducted in Minneapolis under the name of Anchor Laundry Company and that the only persons interested in the business were himself and Ann Hirsch. Petitioner and his wife agreed orally that they would share equally in the earnings of the business. They operated the business for the rest of the year and still operate the business. Both devoted all their time to the business during the period July 1 to December 31, 1941. They each had a drawing account and withdrew $30 a week. The laundry business has about 60 employees. When the business was a corporation, *364 petitioner and his wife were the managers. The services of each in the business in 1941, when the business was operated as a corporate enterprise and afterward, when the business was operated by petitioner and his wife, were as follows: Petitioner worked on a laundry route, and he also worked inside the plant. Inside the plant he performed a variety of services, ranging from manager, supervisor of routes, engineer, folder on flat-work ironer, and hiring workers. Ann Hirsch did inside work, working 8 or 9 hours a day. She worked in the office doing general office work, keeping time records, posting, and waiting on customers. She also worked in the plant part of the time both as a supervisor of operations and as a worker on ironers, and at various times, she hired workers. Petitioner worked for Anchor Laundry Co., Inc., the corporation, as a route driver and in other capacities from before 1928 until the corporation was dissolved. Ann Hirsch was employed by the corporation also. During the years 1938 to July 1, 1941, they received compensation from the corporation for their services as follows: Year
W. J. Hirsch
Ann O. Hirsch
1938
$7,900
$ 989.90
1939
8,900
1,500.00
1940
8,500
1,464.50
1941 (Jan. to July)
4,450
878.50
*365 The assets of the corporation as of July 1, 1941, consisted of a piece of real estate in Minneapolis, a building, delivery trucks, power plant, machinery, inventory and supplies, accounts receivable. The book value of the assets, less depreciation, was $61,618.82. There were outstanding obligations consisting of mortgage and bank loans, notes payable, and accounts payable, aggregating $30,257.08, which included notes payable to petitioner of $10,293.45, for money he had loaned to the corporation. According to the books of the corporation the net worth of the business was $31,361.74. A partnership return of income was filed for the period July 1 to December 31, 1941. The net income of the business for that period was reported as $16,068.67. Petitioner filed a separate return for 1941 and so did his wife. Each reported, respectively, one half of the net income of the Anchor Laundry Company business - $8,034.34 and $8,034.33. Respondent recognized that the business was conducted in partnership in his determination of the deficiency, but he increased petitioner's share of the distributive income of the business to $13,074.62, increasing the income of petitioner by $5,040.28. Opinion
*366 In his answer to the petition, respondent admitted as follows: "Admits that on or about July 1, 1941, the petitioner and his wife, Anna Hirsch, formed a partnership under the trade name of Anchor Laundry Company". Petitioner testified, and Ann Hirsch testified, that an oral agreement was made that they would share equally in the earnings of the business. Section 182 (c) of the Internal Revenue Code provides that each partner shall include in his income, whether or not distribution is made to him, his distributive share of the ordinary net income of the partnership. The question arises under this provision. The petitioner and his wife had agreed upon what the distributive share of each would be in the earnings of the business. The respondent, by his original determination of the income tax liability of petitioner and by his pleading, has conceded that petitioner and his wife conducted a business in partnership. The issue is thus narrowed, and the question must be decided under the pleadings. Furthermore, on brief, respondent concedes that Ann Hirsch had an investment of at least $4,750 in the capital of the business, and also that upon the liquidation of the *367 predecessor corporation net assets of the corporation were distributable to her of a value of at least $8,168.31. While there is no evidence to show that any amount of the separate earnings and income owned by Ann Hirsch were applied to the purchase of any stock standing in her name, either as a sole or a point owner, respondent has not requested by written motion, or otherwise, for leave to amend his pleadings to conform to the record. In the face of the record made, respondent has acquiesced throughout in the theory of petitioner that the business was conducted in partnership. Under these circumstances the determination of the respondent must be reversed. However, since respondent has advanced in this proceeding an argument that the distributive share of each partner in the earnings of the partnership should be determined upon two factors, the value of the services contributed by each partner and the proportion of each partner's contribution to the total capital of the business; and since this argument proposes a method for fixing shares in partnership earnings which radically departs from the agreement of the partners; and since respondent does not cite Harriet A. Taylor, et al., 2 B.T.A. 1159, *368 which is in point, but cites Max German, 2 T.C. 474, which is not in point, the special aspects of the problem in this proceeding are discussed. As was true in Max German, supra, respondent here is concerned with the amount of capital which the wife of petitioner contributed to the business, with the difference that respondent concedes here that the wife contributed capital, but in a lesser amount that petitioner did, as well as that the wife contributed services in the taxable year. However, in the German case, respondent contended that no partnership existed in the conduct of a family enterprise, and that the entire earnings of the business were taxable to the husband. In the German case, this Court did not hold or find that the business was conducted in partnership during the taxable year, and, accordingly, the determination made by this Court that the income tax liability of the husband was upon 75 percent of the earnings was not made under the provisions of section 182 (c) of the Internal Revenue Code. The conclusion made from the facts was that the wife, Rose German, had earned income in the business which remained her own; that *369 she had left some part of those earnings in the business; and that, consequently, she was in fact the owner of part of the capital in the business. Therefore, she owned part of the earnings of the business. Since the record did not show the exact amount of Rose German's contribution to the firm capital, the Court considered it proper to make a rough approximation of the proportion of her contribution to the total capital, under the authority of Cohan v. Commissioner, 39 Fed. (2d) 540, and it did so, with the result that Max German was held liable for tax upon only 75 percent of the business's earnings It was pointed out that the husband and wife were thinking of their relationship and interests as husband and wife, or as a family, and not as business partners would do. Also, that the question presented was whether, on the special facts, the income of the family enterprise was divisible as a matter of law for income tax purposes because of the individual rights of the husband and wife in the business, "whether the basis of those rights be that of partners or not." In the reasoning and in the holdings made in the German case this Court did not overrule the rule set forth *370 in the Taylor case, and no reference was made to that case. In the Taylor case the issue was poised upon respondent's agreement that a partnership existed between four individuals, among them a husband and wife. In a brief opinion, it was stated by the Board of Tax Appeals, inter alia, that the profits from partnership business need not be divided "according to the capital contributions of the several partners." In that case, in the German case, and in this case, capital was an important element and services were an important element in the production of income in the business. It is likely and possible that under special facts, and where the individuals conducting a business are husband and wife, consideration should be given to the respective contributions of the parties of services and money to the business, but this Court has not, so far, held that the distributive shares of income are to be computed for income tax purposes under the method which respondent adopted here where (1) there is a partnership, recognized for tax purposes, and (2) there is adequate evidence that both the husband and wife have contributed something to the capital of the business, or have made their contributions *371 in services, or both. The record in this case has peculiar features, despite respondent's concessions and pleadings. But in view of his concessions and the way the pleadings present the issue, we cannot find cause for departing from the rule set forth in the Taylor case in this proceeding. The difficulties, however, of approving the respondent's proposed method of determining "distributive share" of partnership income, in derogation of the terms of a partnership agreement, are set forth in Estate of S. U. Tilton, et al., 8 B.T.A. 914, which, it is noted, did not involve a family enterprise conducted by a husband and wife. However, in the Tilton case the following was stated: It is well settled that partners are not entitled to a salary or compensation for services rendered to the partnership in the absence of an agreement express or implied, the reason being that the partnership relation imposes upon each member of the firm the obligation to devote his time and abilities to the affairs of the firm. The reward to which each partner is entitled is his right to share in the partnership earnings. Where there has been no agreement otherwise, the partners will share equally *372 in the benefits derived, regardless of the ratio of their contributions and irrespective of the forms of such contributions. However, the partnership agreement will control. If the partners agree on a proportional distribution of partnership profits, the agreement will be given effect since the courts have recognized the impracticability of determining the relative values of the respective contributions of the individual partners. We have heretofore held that partnership profits may be distributed in whatever proportions are determined by the partnership agreement. Appeal of Harriet A. Taylor, 2 B.T.A. 1159. In the light of the above, it is observed that the respondent's method in this case of determining petitioner's "distributive share" of partnership income, despite the agreement between petitioner and his wife that their interests in the earnings would be equal, runs squarely in the face of the "impracticability" which the courts have recognized. Respondent adopted the following method of computing petitioner's share of the partnership earnings: The net income of the business for the period in question was reported as $16,068.67. Respondent determined, first, that *373 part of such net amount represented "earned income", i.e., a reasonable allowance as compensation for personal services. He took as his measure the approximate amount of the annual salaries paid to petitioner and to Ann Hirsch, respectively, by the predecessor corporation which, for a six months' period, would amount to $3,500 to petitioner, and $750 to Ann Hirsch. Thus, a total of $4,250 of the business income was allocated by respondent as "attributable to the labor and skill" of the respective partners in their conduct of the business. While this is not set forth in the statement attached to the notice of deficiency, it is so explained in respondent's brief. The remaining $11,818.67 of the business income was then allocated to capital, said amount being said to be "income attributable to the employment of firm capital", in respondent's brief. Respondent then allocated about 80 percent of $11,818.67, or $9,574.62, to petitioner, under the theory that petitioner had contributed to the business about 80 percent of the capital. Through the above described allocation, respondent determined that petitioner is liable for income tax on $13,074.62 of the net income of the partnership business. *374 In the notice of deficiency the only explanation given was: "Examination of the books and records of the Anchor Laundry Co., a partnership, disclosed adjustment of your distributable share of net income as * * * $13,074.62." Since respondent's method, as set forth above, of determining the distributive shares of a husband and wife in the income of a family enterprise, is novel, and does not have the authority which even attaches to a method of computation approved in a regulation, none having been approved to date, (and, it is noted, that nothing in section 185 of the Internal Revenue Code, or in Regulations 103, section 19.185-1 gives support to the method which respondent has adopted in this proceeding, in our opinion), it is certainly a requisite of good legal procedure that such method should be given serious consideration by a court in testing the validity of a novel procedure, only in a case where the pleadings serve to join an issue in conformity to the facts of the case, which is not true here. It is in order to comment on certain facts in this case, of record, which are not set forth in the findings of fact because, under the pleadings narrowing the *375 question, as has been pointed out, they are not material. For several years prior to the taxable year, Ann Hirsch had been gainfully employed and earned income of her own. But she did not separate her own income from that of her husband. Petitioner gave much of his earnings to his wife to cover family expenses, and she pooled all of the family funds. In 1935, she opened a joint savings account, but never opened a checking account, and in the savings account the family funds were commingled. There is no evidence in this proceeding to prove that any part of the sum of $13,300 invested in 86 shares of common stock and 47 shares of preferred stock prior to 1941, and of $1,600 invested in 16 shares of preferred stock around July 1, 1941, came out of the separate earnings of Ann Hirsch, even though 1 share of common stock stood in her name, and 47 shares of preferred stock stood in the joint names of herself and petitioner. It is customary for husband and wife to hold property in their joint names, but such holding is not the best evidence, in a case where the problem relates to taxation of familv income, that each party has applied his own income in equal amounts to the purchase of the *376 property. There was no written partnership agreement between petitioner and his wife, and no oral agreement is disclosed by the testimony, of the agreed interests, respectively, of petitioner and his wife in the assets and property which came out of the corporation. Ownership of stock in a corporation and the reality of investments of a husband and wife in the assets of a corporation, the assets of which have been transferred to an alleged family partnership, have been closely scrutinized heretofore. See Francis E. Tower, 3 T.C. 396, and O. William Lowry, et al., 3 T.C. 730. In many respects, the facts, as disclosed by the record in this case, resemble those in the German case, supra, where we did not hold that a partnership existed between the husband and wife in the taxable year. Here, as in the German case, the petitioner and his wife were thinking of their interests as a family. However, respondent has conceded that petitioner and his wife conducted a business in partnership. The only question presented turns upon what agreement the partners made as to their interests in the earnings of the business. Evidence was adduced that their interests in the earnings *377 were equal. Therefore, it is held that respondent's determination that petitioner's share of the earnings exceeded 50 percent is reversed. An adjustment of the correct amount of the net income of the Anchor Laundry business may be required as is set forth in respondent's answer. It is not clear whether this adjustment is conceded by petitioner. For other reasons, however, the deficiency must be recomputed. Decision will be entered under Rule 50.