GEORGE K. BRENNEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3567, 3568.   Promulgated April 30, 1945.

*Robert W. Smith, Esq.*, for the petitioner.
*Richard L. Shook, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: Petitioner contests respondent's action in including in his gross income for the respective taxable years 1940 and 1941, (a) all the gain derived from certain coal mining and coking operations on

lands known as Mount Pleasant coal lands; (b) all the dividends from certain shares of stock; and (c) all the interest from certain bonds, payable to bearer. Petitioner and his wife, Gayle P. Brennen, each reported one-half of the gains, dividends, and interest in their individual income tax returns for the respective taxable years.

Petitioner contends that the coal lands from which the coal was mined and sold or converted into coke and then sold, the shares of stock, and the corporate bonds were owned by him and his wife as tenants by the entirety, and that only one-half the gains, dividends, and interest therefrom belonged to him.

Under the law of Pennsylvania, which is of course controlling here, "A tenancy by entireties arises whenever an estate vests in two persons, they being, when it so vests, husband and wife. It may exist in personal as well as real property, in a chose in action as well as a chose in possession. [Citations]." *In re Bramberry's Estate*, 156 Pa. St. 628; 27 Atl. 405. Such estates have long existed in Pennsylvania, and were disturbed neither by the Act of March 31, 1812, abolishing survivorship in joint tenancy, nor by the married women's acts of April 11, 1848, nor by later such acts, including that of June 3, 1887. *Alles* v. *Lyon*, 216 Pa. 604; 66 Atl. 81; *In re Bramberry's Estate, supra*. See also *Madden* v. *Gosztonyi Savings & Trust Co.*, 331 Pa. 476; 200 Atl. 624; *Berhalter* v. *Berhalter*, 315 Pa. 225; 173 Atl. 172; *Werle* v. *Werle*, 332 Pa. 49; 1 Atl. (2d) 244.

We first discuss the issue relating to the gains resulting from the coal and coking operations. The respondent's brief states his position as follows:

\* \* \* The Commissioner's primary contention is that all income derived from a realization on the increase in value of the coal in place as well as that resulting from the mining and coking thereof is taxable in its entirety to the petitioner.

In the alternative the respondent urges that the total income here in dispute should be considered as arising from two sources, viz.: (1) from the ownership of coal in place; and (2) from conducting the business of mining and selling coal and manufacturing and vending coke. With respect to the former source it is the respondent's position that the petitioner as co-owner is taxable on one-half of the gain measured by the difference between the in-place value of the mined coal at the time of its removal and the cost basis thereof. With respect to the latter source the respondent submits that the petitioner as the sole operator and proprietor of the mining business is taxable on the entire profits derived from the operation of that business measured by the difference between the ultimate selling price of the coal (less wages, depreciation on mining and coking machinery, and all other allowable deductions attributable to the operation of said business) and the value of the coal in place when mined. \* \* \*

\*     \*     \*     \*     \*     \*     \*

As a second alternative the respondent contends that the petitioner is taxable on the net profit resulting from the processing of the coal as coal (i. e., screening, sizing and distribution) and from the manufacturing and distribution of coke. That is to say, all the net profit attributable to the processing and handling

of the coal, either as coal or as coke, from the mouth of the pit to the customer constitutes taxable income to the petitioner.

\*     \*     \*     \*     \*     ✿     \*

One or more of these positions might have some merit in a case involving joint tenancy or tenancy in common, either of which is composed of divisible parts. See *Max German*, 2 T. C. 474, upon which respondent heavily relies. None of them are sound, we think, if petitioner and wife held the coal lands by entireties. How were those coal lands held?

The record discloses that on October 25, 1937, H. C. Frick Coke Co. conveyed to petitioner and Gayle P. Brennen, his wife, about 50 acres of coal land designated herein as "Mount Pleasant coal lands." The Pennsylvania rule on estates by entirety is stated in *Beihl* v. *Martin*, 236 Pa. 519; 84 Atl. 953, as follows:

Fundamentally the estate rests on the legal unity of husband and wife. It is therefore a unit, not made up of divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons actually distinct, yet to legal intendment one and the same. Each is seised of the whole estate from its inception, and upon the death of one, while the right of survivorship remains to the other, that other takes no new title or estate. "A conveyance to husband and wife creates neither a tenancy in common nor a joint tenancy. The estate of joint tenants is a unit, made up of divisible parts; that of the husband and wife is also a unit, but it is made up of indivisible parts. In the first case there are several holders of different moieties or portions, and upon the death of either the survivor takes a new estate. He acquires by survivorship the moiety of his deceased cotenant. In the last case, although there are two natural persons, they are but one person in law, and upon the death of either the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. The loss of an adjunct merely reduces the legal personage holding the estate to an individuality identical with the natural person. The whole estate continues in the survivor, the same as it would continue in a corporation after the death of one of the corporators. This has been the settled law for centuries." [*Stuckey* v. *Keefe*, 26 Pa. 397.]

*Stuckey* v. *Keefe*, cited in the quotation, *supra*, went so far as to hold that a conveyance to husband and wife, their heirs and assigns "as tenants in common and not as joint tenants" created an estate by the entireties, the court strongly expressing the opinion that such an estate arose by virtue of "a rule of law founded on the rights and incapacities of the matrimonial union" and that therefore the intention was immaterial. In *Alles* v. *Lyon*, *supra*, however, the Supreme Court of Pennsylvania, after referring to the *Stuckey* case as the leading case in Pennsylvania on estates by entireties, said that no subsequent case had gone that far, but quoted *Merritt* v. *Whitlock*, 200 Pa. 50; 49 Atl. 786, as holding "that it may be considered as still an open question whether husband and wife may not, since the married women's property acts, take as well as hold in common if that be the clear actual intent, notwithstanding the presumption to the contrary."

The petitioner and his wife having taken title to the Mount Pleasant

coal lands, a presumption arose that such title vested in them by entireties, and, since there is nothing in this record contradicting that presumption, we think that such conveyance created an estate by entireties in those coal lands and the rents and profits therefrom in the petitioner and his wife. *Madden* v. *Gosztonyi Savings & Trust Co.*, *supra; Alles* v. *Lyon*, *supra; In re Bramberry's Estate*, *supra; Berhalter* v. *Berhalter*, *supra; Werle* v. *Werle*, *supra; Beihl* v. *Martin*, *supra; Gasner* v. *Pierce*, 286 Pa. 529; 134 Atl. 494; *Commissioner* v. *Hart*, 106 Fed. (2d) 269.

Respondent argues that the rights to the royalties, the release of which was the consideration for the conveyance of the coal lands to petitioner and his wife, belonged solely to the petitioner, and that thus he paid the entire consideration for these coal lands. We think the premise of fact is at least doubtful, but, assuming it to be sound, the argument is without merit. Under Pennsylvania law an estate by entirety arises where the title to property is taken in the name of a husband and wife—regardless of whether the consideration moves from one or both. So, in the case of *In re Berkowitz' Estate*, 344 Pa. 481; 26 Atl. (2d) 296, decided May 11, 1942, involving a bank account in the name of the husband to which the name of the wife was added, the Supreme Court of Pennsylvania said:

> An agreement between the spouses, or other independent evidence of a transfer, was not necessary to create the entirety. And this is true although the account was originally opened in the name of the decedent alone, and notwithstanding that the fund therein may have been contributed by him exclusively: *Bostrom* v. *National Bank of McKeesport*, 330 Pa. 65, 198 A. 644; *Geist* v. *Robinson*, 332 Pa. 44, 1 A. 2d 153. * * * As stated in *Wilbur Trust Co.* v. *Knadler*, 322 Pa. 17, 22, 185 A. 319, 321: "An intention to create the entirety is assumed from the deposit in both names and from the fact of marital relationship."

The same court reached a similar conclusion in the case of *In re Parry's Estate*, 188 Pa. St. 33; 41 Atl. 448, which involved a letter of credit, in the joint names of the husband and wife, the consideration for which was paid solely from funds of the husband.

It follows, we think, that the rents and profits of the Mount Pleasant coal lands are taxable here in equal shares to petitioner and his wife. *Commissioner* v. *Hart*, *supra; Daniel Upthegrove*, 33 B. T. A. 952; *Herman Gessner*, 32 B. T. A. 1258; *George E. Saulsburg*, 27 B. T. A. 744; I. T. 3235, C. B. 1938–2, p. 160.

Are the proceeds from the sale of the coal mined from these lands and the coke converted therefrom "profits" from those coal lands? We think they are. As suggested by counsel for the petitioner, if the petitioner and his wife had found the outcrop of the coal on their property, and by their joint personal efforts had dug a ton therefrom and sold it to a neighbor for money, it would seem unquestionable that the money received from the sale of such ton of coal would have been theirs

by entireties, since it resulted from the sale of a part of their property so held. *Gasner* v. *Pierce, supra; Commissioner* v. *Hart, supra.*

Webster defines coke as "The solid left when a caking coal is deprived of its volatile constituents by heating in a retort or oven. It consists mainly of carbon and is hard, porous, and gray with a submetallic luster. It is much used in metallurgy, and also as a domestic fuel, etc." Thus it is argued that "If, having individually mined such ton of coal, they had carried it to their dwelling in Scottdale, which they owned as an estate by entireties, and there had coked it in their kitchen range, which can be done," how can it be reasonably denied that such coke would have been likewise held by them by entireties "just as the coal was in the hill before it was mined, and just as the coal had been after it had been severed from the land?" And, the argument continues, if they had then sold such coke, the moneys received therefrom would have been held by them by entireties. We think that contention is sound. And it would seem no different conclusion should result from the fact that the owners of the entirety, instead of using only their personal efforts in mining and coking this coal, had employed other persons to do it for them. The Supreme Court of North Carolina implicitly so decided in *Jones* v. *Smith & Co.*, 149 N. C. 318; 62 S. E. 1092. In that case the court held that lumber processed from logs cut from a tract of land held by a husband and wife by entireties belonged to the entirety.

The moneys used in the mining and coking operations here came from the entirety and all the gains therefrom were deposited in a bank account having the same status. That the mining and coking operations were under the management of the husband does not warrant the inference that a severance of the estate by the entireties was intended. It is well settled under the law of Pennsylvania that in matters involving estates by entirety either spouse, so long as the marriage subsists, has power to act for both without specific authorization, provided the fruits or proceeds of such action inure to the benefit of both and the estate is not thereby terminated. *Madden* v. *Gosztonyi Savings & Trust Co., supra; Gasner* v. *Pierce, supra; O'Malley* v. *O'Malley, supra.*

In *George* v. *Dutton's Estate*, 94 Vt. 76; 108 Atl. 515, the Supreme Court of Vermont passed on the question as to whether the account of the administrator of Asa G. Dutton's estate should include the proceeds or profits from a mercantile business managed by the husband which had been acquired from the proceeds of the sale of real estate held by Dutton and his wife. The court there held that the profits of this business were not to be included in the estate of the decedent husband because the fact that this merchantile business was conducted ostensibly as a partnership did not change the fact that the funds with which the decedent and his wife acquired that business came from the sale of property held by them by entireties. It followed, said the

court, that "In law, as between themselves, the business was carried on by them as such tenants, and the property purchased for that purpose, including goods as needed, and the proceeds from the sales were owned and held in the same manner; and on the death of the husband the wife took the whole estate by right of survivorship. [Citations]." The facts in that case, we think, are much less favorable to the conclusion that the profits of the business there were held by entireties than those of the business here. In that case it was a mercantile business which was conducted. Merchandise was bought and sold at a profit. True, the money with which the original stock of merchandise was purchased came from the sale of realty owned by entireties. But none of the merchandise was in any sense at any time a part of or the product of such real estate. In the instant case the coal, which was sold in the market, was some of the very coal which, in place in the ground, constituted an estate by entireties. The coke resulted from partially burning some of the same coal. There was no purchase and sale of other articles or commodities at a profit.

Although "Pennsylvania goes further in the direction of chivalry than most states * * *,[2] we do not now decide whether the law of that state is in accord with that of Vermont on the facts considered in the *Dutton* case, *supra*. We do hold, however, that the gains resulting from the coal and coking operations on the Mount Pleasant coal lands belonged to the entirety composed of petitioner and his wife. And each of them properly reported one-half of such gain in their separate income tax returns for the respective taxable years.[3] On the first issue petitioner is sustained.

The remaining issue concerns respondent's treatment of the dividends from certain corporate stock and the interest on certain bearer bonds received in the respective taxable years. Where the evidence establishes the existence of an estate by entireties with respect to corporate securities, under the law of Pennsylvania, it necessarily follows that the income therefrom belongs to the entirety. *Magee* v. *Morton Bldg. & Loan Assn.*, 103 Pa. Super. 331; 158 Atl. 647. The stipulated facts disclose that during the taxable years involved petitioner and his wife held 1,000 shares Pennsylvania Railroad Co.; 500 shares Standard Oil Co. of Indiana; 300 shares Swift & Co.; that the certificates for such shares were issued by the several corporations in their joint names; and those shares had been purchased with the proceeds of their joint note. Since nothing to the contrary appears, an estate by the entireties existed as to these specific securities. *Beihl* v. *Martin, supra; Alles* v. *Lyon, supra; In re Berkowitz' Estate, supra; In re Parry's Estate, supra; Magee* v. *Morton Bldg. & Loan Assn., supra.*

---

[2] *Commissioner* v. *Hart,* 106 Fed. (2d) 269, at page 271.

[3] See I. T. 3235, *supra*.

The respondent erred in including all such dividends in petitioner's income for the respective years of their receipt.

As to the dividends on the remaining shares of stock, and the interest on the bearer bonds, we are not convinced that petitioner has established that they were owned by entireties. Petitioner largely relies upon the stipulated fact that since 1933, he and his wife had rented in their joint names a safe deposit box, to which either had access, and on October 16, 1944, those securities were in the joint safe deposit box. A joint lease by husband and wife of a safe deposit box is not in itself sufficient to establish joint ownership of the securities found therein. *In re Wohleber's Estate*, 320 Pa. 83; 181 Atl. 479. A joint lease of a safe deposit box merely establishes that each lessee had access thereto. *Matter of Brown*, 86 Misc. Rep. 187; 149 N. Y. S. 138; affd., 217 N. Y. 621; 111 N. E. 1085; *Matter of Squibb's Estate*, 95 Misc. Rep. 475; 160 N. Y. S. 826. The evidence discloses that while the bonds in the safe deposit box on October 16, 1944, were payable to bearer, there is no specific evidence as to when they were purchased or the source of the funds by which they were acquired. The respondent offered in evidence 30 ownership certificates on Treasury Form 1000 for the year 1940 and 21 ownership certificates for 1941, all signed by petitioner, upon which his name alone appears as the owner of the bonds in question. Petitioner's only explanation was that these ownership certificates were signed by him in blank, and that the remaining information appearing thereon was inserted thereon by someone connected with the bank in which the coupons were deposited for collection. It further appears that during the year 1940 bonds issued by the Baltimore & Ohio Railroad Co. were sold at a loss and petitioner claimed a deduction for the entire amount of the allowable loss. In 1941 bonds of Crucible Steel Co., Atchison, Topeka & Santa Fe Railroad, American I. G. Chemical Co., and Koppers Co. were either sold or called. Petitioner reported the transactions and took the allowable net loss as a deduction. All the income received in 1940 and 1941, prior to the sales, was equally divided between petitioner and his wife and so reported on their respective income tax returns. Similar inconsistency appears with respect to certain shares of stock asserted to be jointly owned. In 1940 certain shares of Standard Oil Co. of Indiana were sold, and in 1941 shares of Commonwealth were sold. Petitioner in the respective years claimed a deduction for the entire allowable loss. In 1940 petitioner reported in his return dividends on 13 specific stocks, but his wife did not report any dividends from such shares. However, in 1941 dividends on all of such shares were equally divided between petitioner and his wife.

The record further discloses that on October 16, 1944, all the stock certificates in the joint safe deposit box, excepting those herein previously referred to as having been issued in the joint names of peti-

tioner and his wife, bore the name of the petitioner alone. The transfer form printed on the back of the certificates was signed by petitioner in blank. It does not appear when this was done. Petitioner testified that the certificates were endorsed "usually" and "about the time they were received mostly." He admitted on cross-examination that he had never made any gift tax returns. On brief, petitioner now contends that with respect to the stocks and bonds acquired prior to January 1, 1938, he had made a gift of one-half thereof to his wife. Clearly, the evidence is insufficient to establish a gift or other transfer of such securities. The many infirmities in the evidence seriously impair or wholly destroy its probative value. Petitioner's general assertions carry little weight in view of the many inconsistencies in petitioner's treatment of the property for tax purposes. We conclude that petitioner has failed to establish the ownership of these securities by the entirety. We find no error in respondent's determination that the dividends from the shares of stock other than those issued in the joint names, and the interest on the bonds, belonged to petitioner in the respective taxable years.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

Opper, *J.*, dissenting: The futility of attempting to deal with the proper apportionment of income tax burden in our present-day economy by resorting to complicated and technical rules of ancient property law seems to me aptly illustrated by this proceeding. Tenancies by the entirety have grown up over the centuries accompanied by concepts, traditions, and developments which I doubt we are even in a position to assay correctly without deep study and careful historical research.

But even a casual acquaintance with the background of titles by the entirety shows that the varied principles upon which they are founded are at war with the theories to which we resort in dealing with current tax problems, and that if they are employed, they lead to results which are both absurd and contrary to the superficial consequences. Thus, the very foundation of a tenancy by the entirety is that both husband and wife own all the property. They each have it all, and not half— *"per tout et non per mie." Alles* v. *Lyon*, 216 Pa. 604; 66 Atl. 81. If we say that the husband is not to be taxed because he does not own this income, that conclusion is at variance with the legal fact that he does. "* * * the accruing income * * * belongs in its entirety to each of the two * * *." *O'Malley* v. *O'Malley*, 272 Pa. 528; 116 Atl. 500. Use of the concept should reduce to the absurdity that both are taxable on all of it.

Correspondingly, the doctrine derives from the ancient assumption

that husband and wife are one; yet our tax law treats them as two, and only such treatment could lead to the result reached in the opinion in this proceeding. It is even doubtful whether such changes as have been made in the legal status of married women entitled petitioner's wife to any of this income as a matter of law. The implication from the Pennsylvania cases at least is that, if the husband secures the income, he is entitled to retain it in the absence of a severance of the matrimonial relationship by divorce. *O'Malley* v. *O'Malley, supra;* cf. *Jones* v. *Smith & Co.*, 149 N. C. 318; 62 S. E. 1092.

For my part, I should have been satisfied to see this situation treated as we would if it were the ordinary carrying on of a business in which the parties to the marriage participated to a greater or less extent. This might require an ascertainment of the contribution in property and services made by petitioner and his wife, respectively, to the earning of the income which is sought to be taxed. But that is no insuperable obstacle. Cf. *Max German*, 2 T. C. 474.

ARUNDELL and HARRON, *JJ.*, agree with this dissent.