George A. Paul and Pearl Paul v. Commissioner.
Paul v. Commissioner
Docket No. 56769.
United States Tax Court
T.C. Memo 1957-170; 1957 Tax Ct. Memo LEXIS 79; 16 T.C.M. (CCH) 752; T.C.M. (RIA) 57170; September 9, 1957
Walter L. Mims, Esq., Massey Building, Birmingham, Ala., and John D. Hill, Esq., for the petitioners. James R. Harper, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax of petitioners for the taxable year 1952 in the amount of $172,797.84. The question presented is whether the G. A. Paul Construction Company was a bona fide partnership in the year 1952 consisting of G. A. Paul, his son-in-law, Frank C. Hicks, Jr., and his daughter, *80 Gloria Paul (now Gloria Hodo). Findings of Fact The facts stipulated are found accordingly. George A. Paul and Pearl Paul are husband and wife residing at 14 Bonita Drive, Birmingham, Alabama. They filed a joint return for the year 1952 with the collector of internal revenue for the district of Alabama. Pearl Paul is a party solely by reason of filing a joint return. George Paul, in 1952 was 73 years of age. He was a carpenter and has been in the construction business about 45 years. During the 1920's he built individual dwellings, but during the war and thereafter he undertook large construction jobs. Frank C. Hicks, Jr. was graduated with a B.S. degree in business administration in 1935. In 1940 he married Desiree Paul. After graduation, Hicks was variously employed as a factory clerk, insurance adjustor, insurance and bond salesman, and as superintendent of a casualty department. In 1947, Hicks entered into an agreement with Paul under which arrangement he was to receive a minimum of 25 per cent of the profits of the construction business, the exact amount to depend on Hicks' efficiency as a manager. The undrawn portion of Hicks' profits as recorded on the books of the *81 construction company at the end of the years 1947, 1948, and 1949, was $22,050, $29,178.11, and $49,870.75, respectively. Gloria Paul was graduated from Phillips High School in June 1943. She attended Judson College for one year and studied at the University of Alabama until December 1946 when she was employed in the payroll department of the Tennessee Coal, Iron & Ry. Co. During such employment, Gloria often assisted her father in the construction business at his office which was maintained in the home. In 1949, Hicks and Paul were in disagreement in respect to certain construction jobs. Believing Gloria would have influence with her father Hicks had various discussions with her about resigning her position and entering into a partnership with him and her father in the construction business. In January 1950, Gloria did quit her job and it was orally agreed among the three to carry on the construction business as partners. It was the understanding that the profits and losses were to be shared on a basis of 51 per cent to Paul, 33 per cent to Hicks, and 16 per cent to Gloria. At the beginning of the taxable year 1952, the undistributed profits allocated on the partnership records *82 to Hicks and Gloria were in the amounts of $87,313.97 and $39,313.93, respectively, and computed as follows: Frank J. Hicks, Jr.
Undistributed
Year
Profit
Withdrawals
Profit
1947-1949
$49,870.75
1950
$50,000.00
$37,676.75
12,323.25
1951
50,982.17
25,862.20
25,119.97
Total
$87,313.97
Gloria Paul
1950
$28,000.00
$ 2,600.00
$25,400.00
1951
28,889.90
14,975.97
13,913.93
Total
$39,313.93
The bank account was carried in the name of G. A. Paul, and as of December 31, 1951, the balance was $786,003.81, and included the above undistributed profits of Hicks and Gloria. The partnership had very little equipment since a general contractor subcontracts most of the work. The depreciation schedule on the 1952 partnership return shows three one-half ton trucks, a Plymouth sedan, and a small concrete block building. The percentage of the profits received by each of the partners for the taxable year 1952 was as follows: G. A. Paul
$230,718.78
51 per cent
Frank C. Hicks, Jr.
149,288.62
33 per cent
Gloria Paul
72,382.37
16 per cent
Paul was a competent construction man with many years of experience. *83 In 1952 he was partially retired and was not active in the management of the business. He usually arrived at the office at about 8:00 a.m. and left for home around 10 o'clock. He would return around 3:00 p.m. but seldom went out where the construction work was going on. Hicks prepared the estimates and bids, negotiated the contracts with the subcontractors, conferred with the superintendents on the running of the jobs and methods of construction, checked on materials, handled transactions with the owners and the architects, and figured the extra work where there were additions to the contracts. Gloria Paul was in charge of the finances, paid the bills, including those of the subcontractors, and had charge of the payroll and social security records. She also assisted Hicks in the preparation of estimates and bids, ordered materials, made policy decisions, and performed Hicks' duties in his absence. The subcontractors consulted with both Hicks and Gloria and acted upon their instructions. Paul was well established with builders, business people, and the banks. All contracts were taken in the name of G. A. Paul, doing business as G. A. Paul Construction Company. Until the end *84 of 1952, only one bank account was maintained in the name of G. A. Paul and he was the only one authorized to sign checks. Neither Hicks nor Gloria was authorized to sign checks on that account. The practice followed was for Paul to sign approximately 50 checks in blank which were filled in and used by Hicks and Gloria as the operations of the business required. Hicks and Gloria each received the amounts shown on the books of the G. A. Paul Construction Company in the partners' capital accounts. Each reported the amounts received on their respective income tax returns and have paid the tax thereon. No refund thereof has been received. In the deficiency notice the respondent included in the gross income of petitioners the income of the G. A. Paul Construction Company less an allowance of $13,000 as salary to Hicks and less $10,000 as salary to Gloria. During the taxable year 1952, the G. A. Paul Construction Company was a valid partnership, consisting of G. A. Paul, Frank C. Hicks, Jr., and Gloria Paul (Hodo), as general partners. Opinion LEMIRE, Judge: The primary question presented is whether, during the year 1952, the business conducted under the name of G. A. Paul Construction *85 Company was a bona fide partnership consisting of G. A. Paul, Frank C. Hicks, Jr., and Gloria Paul (Hodo). The basic question in determining the validity of a partnership for tax purposes is whether the parties really and truly intended to join together for the purpose of carrying on a business and sharing in the profits and losses. Intent is a question of fact and is to be determined by the agreement of the parties and their conduct in carrying out its provisions. The tests usually applied in determining the prerequisite intent are capital contributions, rendition of vital services, and participation in management. Commissioner v. Culbertson, 337 U.S. 733. This record shows that no formal partnership agreement was executed. The absence of such formality is not fatal. Eckhard v. Commissioner, 182 Fed. (2d) 547. We are convinced from the testimony that there was a mutual oral agreement among the three individuals concerned to operate a construction business as partners and as to the ratio the profits and losses were to be shared. The record also shows that each partner contributed their own capital, rendered vital services, and participated in the management *86 of the business. G. A. Paul had an established reputation as a competent construction man, but was not too active in the taxable year in question because of his advanced age. The preparation of estimates and bids which resulted in the procurement of the construction jobs as well as the detailed work in carrying the contracts to successful completion, was primarily due to the ability and management furnished by Hicks and Gloria Paul. Hicks had been in the construction business with G. A. Paul since 1947 both as estimator and manager. Prior to that time he had often assisted Paul in making estimates and bids for construction jobs. Hicks' qualifications are amply demonstrated. Gloria was well educated. She had often assisted her father in his office prior to 1950 when she was induced to resign her then position with the Tennessee Coal, Iron and Ry. Co. to enter in the partnership with Hicks and her father. The record shows that she rendered vital services and made independent policy decisions. The testimony of Hicks and Gloria was frank, persuasive, and credible. While the record contains some minor inconsistencies, in the light of the whole picture revealed, we do not regard *87 them as significant. After a careful consideration of all the evidence, we have no difficulty in concluding that a valid partnership was intended and created among Paul, Hicks, and Gloria, to conduct the construction business in partnership form during the taxable year 1952. The respondent argues that the Court has a duty to make an allocation under the provisions of section 191 of the Internal Revenue Code of 1939. [1]Section 191 was incorporated into the Code by section 304(b) of the Revenue Act of 1951. By section 304(c) it is made applicable to the taxable years beginning after December 31, 1950. *88 Section 191 relates to "family partnership." This is not a case of a typical family partnership. Hicks, one of the partners, was related by marriage only and is not a member of the Paul "family" as that term is defined in section 191. Furthermore, this record contains no evidence of a partnership interest created by gift. In our opinion section 191 of the Code is not applicable here. The respondent cites the case of Max German, 2 T.C. 474, where this Court in a husband and wife partnership did reapportion the income under the facts there involved. We do not think the German case is an authority for making an allocation in the instant proceeding. Hartz v. Commissioner, 170 Fed. (2d) 313, 318. Decision will be entered under Rule 50. Footnotes
1. SEC. 191. FAMILY PARTNERSHIPS. In the case of any partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his gross income, except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital. The distributive share of a partner in the earnings of the partnership shall not be diminished because of absence due to military service. For the purpose of this section, an interest purchased by one member of a family from another shall be considered to be created by gift from the seller, and the fair market value of the purchased interest shall be considered to be donated capital. The "family" of any individual shall include only his spouse, ancestors, and lineal descendants, and any trust for the primary benefit of such persons.↩